[Civil No. 3678. Filed April 13, 1936.]

[56 Pac. (2d) 1044.]

## R. H. SIMPSON, Appellant, v. SECURITIES SERVICE CORPORATION, a Corporation, Appellee.

Messrs. Cox & Moore, for Appellant.

Mr. G. W. Shute, for Appellee.

ROSS, J.—The plaintiff, R. H. Simpson, commenced this action to recover from defendant, Securities Service Corporation, the sum of $122,200.98, alleging he had paid said sum to defendant under compulsion and from fear of losing 2,300 shares of J. C. Penney Company stock, of great value, that he had placed with the defendant as collateral security to certain obligations he had contracted with defendant. The defendant filed a general demurrer and a general denial. The case proceeded to trial before a jury. At the close of plaintiff's case, the court instructed the

jury to return a verdict for defendant. From this ruling the plaintiff appeals contending the court erred.

The contracts, the basis of plaintiff's cause of action, were all written and are set out in the complaint. Construing or interpreting these the court held, in effect, that plaintiff stated no cause of action. Plaintiff contends the contracts are ambiguous and that their meaning under the evidence was a question for the jury.

According to the complaint, during the early part of 1929 plaintiff entered into seven contracts with the Arizona Investment Service, of Phoenix, alleged to be the agent of and acting for the defendant, to purchase common stock of the J. C. Penney Company, at the price and on the terms therein mentioned, and deposited with such agent of defendant 2,300 shares of the common stock of the J. C. Penney Company as collateral for the payment of balances of purchase price. The contracts consist of two instruments and since they are the same in each transaction or purchase we here set out the instruments evidencing only one of such contracts. One of such instruments is called the "Purchase Contract" and is in words and figures as follows:

"To Arizona Investment Service,
 22 West Monroe,
 Phoenix, Arizona.

 "Date 3/5/29.
 "(a) —— to be held as collateral in lieu of first payment.
"I herewith hand you
 "(b) —— ($——) cash to be applied as first payment on the following:
200 shares of J. C. Penney Common 'When issued' stock @ $139 and in payment of your Investment Counsel fee, all in accordance with your Investment Savings Plan, the terms of which are set forth on

the reverse side hereof, and which constitute this agreement.

"The purchaser is to complete payment for the above mentioned securities in ten equal installments plus 7% interest on deferred payments. Installments are to be due and payable every ninety (90) days from the date hereof. Interest or dividends paid on said securities shall be credited to the account of purchaser pursuant to the terms of this agreement.

"It is further agreed that purchaser may, at his option, complete payments at an earlier date.

"Name R. H. SIMPSON

"Purchaser.

"Flagstaff."

The other instrument reads:

"Amended Certificate.

"ARIZONA INVESTMENT SERVICE.

"Certificate.

"No. 5966–329.

"THIS IS TO CERTIFY that the ARIZONA INVESTMENT SERVICE has this 5th day of March, 1929, contracted with R. H. Simpson, Flagstaff, Arizona, to sell and deliver the following named security:

"200 shares of J. C. Penney Stock @ $139.00 per share.

(New) Common

"In addition to the above amount the purchaser has agreed to pay to ARIZONA INVESTMENT SERVICE a sum equal to ten per cent (10%) of the deferred balance, not to exceed $3.00 per share, as a charge for the investment service.

"Using part 2300 shares J. C. Penney Co. as collateral for $14,422.00, leaving a balance, including the investment service charge of $14,445.99.

"This transaction is made according to the investment service contract, on the investment service plan, in conformity with the terms and conditions contained in the agreement this day executed, which calls for completion of payments of said balance above mentioned in ten (10) equal installments of $1,444.59 each, together with interest on the deferred

balance due for the cost of stock at the rate of seven per cent (7%) per annum, each installment to become due every ninety days from the above date.

"It is further agreed that R. H. Simpson may at his option complete payments at an earlier date.

"SPECIAL CONTRACT: No further installment payments required except periodic payment of interest.

"ARIZONA INVESTMENT SERVICE.

"By A. F. McDUFFIE."

These instruments and the printed indorsements thereon constitute the contract. The Purchase Contract is an offer by plaintiff to buy and the other is in the nature of an acceptance of the offer, a receipt for part payment of the purchase price, and the acceptance of 2,300 shares of J. C. Penney Company stock as collateral for balance of purchase price. On the reverse side of the Purchase Contract are a number of other terms and conditions, which we summarize as follows:

(1) It is mutually agreed that if the purchaser pays to the seller the amount specified in the contract and interest thereon the seller will sell and deliver to him the securities contracted for.

(2) If the market price of stock to be purchased, or of the stock deposited as collateral depreciates as much as 20% below the price agreed to be paid for stock, the purchaser agrees to pay to the seller a satisfactory sum, to be fixed by the seller, which will be credited on interest and the purchase price.

(3) "When the purchaser shall have, according to the terms of this purchase agreement, paid all installments herein agreed to be paid, and interest or other charges herein referred to, and shall have performed all other covenants, terms and conditions hereof, all of which are hereby

agreed to be conditions precedent, then the seller shall sell and, within fifteen (15) days, deliver said security or securities to purchaser. . . . ''

(4) Time is made the essence of the contract and in the event the purchaser defaults in any payment or other condition, the seller, at its option, may cancel the agreement, in which case its only obligation is to return to the purchaser, within fifteen days, a sum equal to all payments, less investment counsel fees, less interest charges paid or unpaid, less depreciation of the market value of securities on the day of cancellation.

There are other conditions but they are not material to the question involved.

 The whole question revolves around the meaning to be given to the words ''No further installment payments required except periodic payment of interest,'' found at the end of the Amended Certificate. The plaintiff claims these words ''relieve the plaintiff from payment of the balance of $14,445.99,'' or if not that they rendered the contract ambiguous. We cannot agree with this contention. They no more forgive the installments on the purchase price than they do the interest on such installments. They simply relieve the plaintiff from paying one-tenth of the purchase price every ninety days. If he wants the stock, whether at the end of the thirty months or at an earlier period, he must pay the balance of the purchase price. He is given the option to ''complete payments at an earlier date'' rather than at the end of thirty months. If plaintiff was by the words quoted relieved of paying the balance of the purchase price, why is he required to pay periodic interest thereon? Interest is an incident to principal. Again, if the

balance was canceled there was nothing further for the plaintiff to do except to demand his securities. We might ask, what was the consideration for the canceling of the balance of the debt? Plaintiff had agreed to buy 200 shares of the common stock of the J. C. Penney Company at $139 per share, which amounts to $27,800. He had paid thereon enough to leave a balance of $14,445.99, including the investment service charge and, according to plaintiff's contention, this sum was forgiven or canceled so that he was no longer required to pay it in order to be entitled to his securities, but he must pay periodic interest on such balance. Even if the language imported such a gift, it would lack consideration.

The stipulations on the reverse of the Purchase Contract all show that it was the clear and unmistakable intention of both parties to the contract that the purchaser should pay all of the balance due thereon before receiving the stock, or that if he defaulted in his payments and the seller exercised his option to cancel the agreement he should have returned to him, within fifteen days, a sum equal to all payments, less investment counsel fees, less interest charges paid or unpaid, less depreciation of the market value of securities on the date of cancellation.

The rule of law is that, when parties reduce their agreement to writing and there is no obscurity or ambiguity in the language employed to express their agreement, it is the duty of the court to interpret it. From an examination of the contracts here involved, there seems to be no difficulty in determining from the language employed what the parties bound themselves to do, and for that reason the trial court very properly declined to submit the interpretation or construction of the contract to the jury, but, as was its

province and duty, passed upon it and held that there was nothing for the consideration of the jury.

. It would seem that plaintiff in making payment of balances on his several contracts was only discharging his contract obligations.

We think the judgment should be affirmed, and it is so ordered.

LOCKWOOD, C. J., and McALISTER, J., concur.