248 P.2d 740

**VALLEY NAT. BANK OF PHOENIX v. MILMOE.**

No. 5511.

Supreme Court of Arizona.

Oct. 6, 1952.

Knapp, Boyle, Bilby, Thompson and Henderson, of Tucson, for appellant.

Conner & Jones, of Tucson, for appellee.

UDALL, Chief Justice.

The Valley National Bank, one of the defendants below, has appealed from· a judgment entered against it in the sum of $4,842.25 in favor of plaintiff, Florence G. M. Milmoe. The plaintiff alleged that she was damaged in this amount when the defendant bank, as her agent, carelessly and negligently violated her instructions in paying off, with money furnished by plaintiff, a mortgage indebtedness owing Mary Roberts, mortgagee, without simultaneously procuring a new mortgage to her on the same property from the defendants Helen J. Milojevich and Stephen Milojevich. There is no charge of fraud or deceit on the part of the bank.

The admitted facts are: The defendants, Helen ·J. Milojevich and Stephen J. Milojevich, owned and operated the Celita Linda guest lodge at 398 W. Alameda in Tucson to which the plaintiff, Florence G. M. Milmoe, came as a guest in January of 1948. The defendant Mrs. Milojevich and the plaintiff became very friendly. In February the plaintiff borrowed $1,250 from a Tucson bank and then loaned it to the Milojevichs to enable them to pay off an indebtedness owing on furniture recently purchased. The note given to plaintiff therefor was payable in monthly installments and repayment was begun by the Milojevichs. In May plaintiff was approached by the defendant Mrs. Milojevich, to see if she were interested in aiding them by paying off the purchase money

second mortgage on the lodge held by a Mrs. Mary Roberts and combining the furniture and mortgage indebtedness into one loan, thus allowing the Milojevichs to make a single reduced monthly payment. Nothing was done towards accomplishing this while plaintiff remained at the lodge. The two women however corresponded after plaintiff returned to her home in Illinois.

An offer to discount the second mortgage ten percent was made by Mrs. Roberts. This information was conveyed to plaintiff by letters from both Mrs. Milojevich and Mrs. Roberts. Defendant, Mrs. Milojevich, acting as agent for plaintiff, apparently advised the escrow officer at the bank that the discount offered by Mrs. Roberts might be accepted by plaintiff, though no detailed instructions as to how the transaction should be handled were conveyed to the bank. It is conceded that the bank's liability, if any, in this matter must rest entirely upon what is to be found within the four corners of the correspondence had between the parties to this appeal.

Under date of June 4, 1948, the plaintiff, writing from her home in Illinois, sent the following letter to the defendant bank at Tucson for attention of its escrow department, viz.:

"Gentlemen: This check is *absolutely good*. My reason for sending it instead of a cashier's check is that I like them back in my statements. This figure is approximately the amount before the May payment.

"I don't know how far you go in making up the new mortgage but if you write it please make it in my daughter's name, Marian M. Milmoe Brand, as well as mine, Florence G. M. Milmoe, and word it so that it becomes the property of survivor in event of death of either one. In this state we use the term "joint Tenancy" or "with right of survivor." You will know what to use for Arizona.

"If you don't happen to know Helen Milojevich's phone No. it is listed as Celita Linda Lodge. I have forgotten the number.

"Very truly
Florence G. M. Milmoe"

In reply A. G. Kimball, manager of the escrow department of the defendant bank, on June 7, 1948 (date her letter was received) wrote the plaintiff as follows:

"We have your letter of June 4th, enclosing your personal check for $4,-900.00. *Before any papers can be delivered or the mortgage released* it is necessary for us to send this check in for collection which we have done so this date.

"As soon as we receive returns on it we will notify Mrs. Mary Roberts, who holds the note to release it and we will send all papers in connection with this file to Stephen Milojevich and wife." (Emphasis supplied.)

A week later on June 14th, the said manager sent a follow-up letter to the plaintiff reading as follows:

"We have just received returns on your $4900.00 check and your bank has charged $1.00 for collection. The balance of the Stephen Milojevich-Roberts note is $5348.34 less discount allowed by Mrs. Roberts of $534.83 making a balance due of $4813.51, plus interest of $26.74 or a total pay-off of $4840.25. This leaves a difference of $58.75.

"We understand from Mrs. Milojevich that you have agreed with her to stand the expenses of refinancing this loan, in having the new note and mortgage prepared and the title searched. Upon her instructions we are therefore, holding the $58.75 to pay the Tucson Title and Insurance Company the expense in connection with the refinancing (of) this loan.

"If this is your understanding and meets with your approval, will you please advise us."

Then on June 16th the bank's manager further wrote the plaintiff as follows, viz.:

"Since writing you on June 14th, we have been instructed by Mrs. Milojevich to forward the balance of the Roberts pay-off of $58.75 to you and we enclose our Cashier's check No. 92417, payable to your order for said amount."

The plaintiff replied on June 18th, the pertinent parts of her letter reading as follows:

"In reply to your letter of the 14th, I am enclosing a form that I prefer to a mortgage.

"I do not want to go to the expense of a title search on this property. My idea of the reason for such a search is to show the person who puts up the money that the title is good.

"I know what conditions exist regarding this one and so if you care to fill in the description on this trust deed and have the Millers (Americanized) sign it, at a cost not to exceed five dollars, and then at the same time that you have the release recorded have this trust deed recorded, taking out both recording fees, of course, you can send me the remainder of my balance.

"If you don't want to bother with it at all, send everything to me but *do not* have the release recorded until this is also ready to be recorded.

\* \* \* \* \* \*

"If you can't use this form in your state, return everything to me and I'll ask Helen to get a blank form when I know the kind of form I can get. \* \* \*."

The final letter in this chain of correspondence was a communication from Mr. Kimball advising the plaintiff Milmoe:

"We have your letter of June 18th, but we are unable to comply with your

wishes on the matter as the bank is not allowed to make up a legal paper. We are therefore returning the copy of the blank trust deed which was enclosed in your letter.

"Under date of June 16th, we wrote you enclosing our Cashier's Check for $58.75, being the balance of the Milojevich pay-off."

The record shows that on the very day (June 14) when the proceeds from the Milmoe check were received by the bank, its escrow department manager called Mrs. Roberts by telephone, who came to the bank—confirmed the discount that was to be allowed—took the book and page number where her mortgage was recorded—went to the county recorder's office and made a marginal release thereon in accordance with the provisions of Section 62–506, A.C.A.1939. It will be noted that in the correspondence heretofore set forth the bank did not *specifically* advise the plaintiff that the mortgage had been released of record. The net proceeds were then credited to Mrs. Roberts' checking account in the Valley National Bank. Very shortly thereafter the bank delivered the old mortgage papers to Mrs. Milojevich who forwarded them on to the plaintiff. Mrs. Milojevich at one time or another made inquiry at the Tucson Title Insurance Company relative to having the new note and mortgage prepared by them. After talking to the title company officials it appears she believed the easier course was to let Mrs. Milmoe pre-pare the papers the way she wanted them, the former being confused by the Arizona requirements for creating a joint tenancy as explained to her by the company, and such a course it seems having been suggested by plaintiff in one of her letters.

Other correspondence between Mrs. Milmoe and the Milojevichs followed with a passing of papers back and forth. Through misunderstanding or otherwise no second mortgage from the Milojevichs to plaintiff Milmoe was ever executed or recorded, though they, for upwards of a year thereafter, stood ready, willing and able to give such a second mortgage, as during all of this period the record remained unchanged. During the latter part of June, 1948 a promissory note prepared by Mrs. Milmoe was signed by them and returned to her.

Several monthly payments were made on the note by the Milojevichs and then all payments stopped. Thereafter inquiry by her son in Tucson disclosed to Mrs. Milmoe that there was no second mortgage of record to her. This suit was then immediately started to subject the property to an equitable lien and to determine the priority of such lien as against judgment lienholders and the holder of another recorded mortgage, and finally, to recover from the defendant bank—damages for carelessly and negligently violating her instructions by paying the amount due on the Roberts mortgage without first obtaining a new mortgage for her from the defendants Milojevich.

The court sitting without a jury gave judgment against the defendant bank that plaintiff recover the sum of $4,842.25 with interest from June 14, 1948, being the amount the bank had delivered to Mrs. Roberts when the second mortgage was released. No findings of fact were requested or made by the court, hence we are left to grope as to the basis for the court's ruling.

Appellant's first assignment of error is in substance that the court erred in entering judgment since there was no competent evidence proving or tending to prove (1) that the Valley National Bank assumed or agreed to act as the agent of Mrs. Milmoe in the refinancing of the Milojevich property, or (2) that the bank did in any manner convert or wrongfully dispose of said money, or (3) that the bank did carelessly and negligently violate any instructions of the plaintiff relative thereto.

The second assignment of error is that there is no evidence proving or tending to prove that the plaintiff suffered a loss compensable in anything more than nominal damages since there was no evidence that the indebtedness owing by the defendants Milojevich to the plaintiff Milmoe was of any less value unsecured than it was, or would have been, secured by a second realty mortgage. In view of the disposition that is being made of the matters urged under the first assignment of error, it will be unnecessary for us to consider the points raised under the second assignment.

Plaintiff's counsel resourcefully suggests that the judgment of the lower court might well be sustained upon any of the following theories, viz.:

(1) Agency

(2) A special deposit with the bank, having "mandatory features"

(3) Bailment

(4) A fiduciary or trustee relationship.

After a careful analysis of the entire record, we hold that the trial court could not have properly found a conversion or violation of instructions of such nature as to form the basis for legal liability under any of these theories apart from the question of agency. We shall therefore limit our discussion to the points urged under the first assignment.

Nearly all of the recent cases follow the definition of agency as given in Restatement, Agency, section 1, pages 7 and 8:

"Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other so to act. (a) The relationship of agency is created as the result of conduct by the parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act. The principal must in some manner indicate that the agent is to act for him,

and the agent must act or agree to act on his behalf and subject to his control. (b) It is not necessary that the parties intend to create the legal relationship or to subject themselves to the liabilities which the law imposes upon them as a result of it. On the other hand, there is not necessarily an agency relationship because the parties to a transaction say that there is, or contract that the relationship shall exist, or believe it does exist. Agency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary." Also, see Mechem on Agency, 2d Ed., section 252.

Taking this definition by its parts and applying it to the facts of this case, what do we find? First, there was a manifestation by plaintiff to the bank, in her letters of June 4th and June 18th, that she would and did authorize the bank to prepare the mortgage papers and handle the recordings for her, *if they chose so to do.* This however is only one of the necessary elements because the other person must consent so to act. Quoting the Restatement, supra, "the agent must act or agree to act on his behalf and subject to his control."

Did the defendant bank agree to act in such a capacity? The letters of the bank are silent as to an acceptance, however when they returned the trust deed form to plaintiff they explained that they were not allowed to draw legal instruments. Thus the only express statement of the bank is not one of agreement but of refusal. While this is some evidence of the bank's intent, it is not controlling for this statement was made after the transaction was completed.

The other question is whether the bank by its actions in connection with receiving and making payment of the money sent to it, as the acknowledged agent for Mrs. Roberts in the collection of her note, manifested an agreement to create a fiduciary relationship where it would be subject to the control of plaintiff? If it did then the relationship of principal and agent existed "for it is not necessary that the parties intend to create the legal relationship or to subject themselves to the liabilities which the law imposes as a result of it."

 In considering the acts of the bank we must look to all the circumstances and not just to the situation between Mrs. Milmoe and the bank. Clearly the bank was the agent of Mrs. Roberts in collecting her note. As her agent the bank owed certain duties and obligations to Mrs. Roberts.

"The agreement to act on behalf of the principal causes the agent to be a fiduciary, that is, a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking. Among the agent's fiduciary duties to the principal is the duty * * * not to act as, or on account of, an adverse party without the princi-

pal's consent * * *." Restatement, Agency, 13 comment (a).

A person will not be permitted to take on himself the character of an agent, where on account of his relationship to others he would be compelled to assume incompatible and inconsistent duties and obligations. See, Mechem on Agency, 2d Ed., section 177.

Therefore, where the bank's actions were done in discharging duties owed to Mrs. Roberts by virtue of the relationship of principal and agent existing between them, this court will not view them, in the absence of other evidence, as manifesting an agreement on the part of the bank to thereby become the agent of plaintiff in procuring a new mortgage.

The positive instruction to not release the mortgage until the new one was prepared came after the bank had completed payment and delivered all the papers to Mrs. Milojevich. Possibly this lawsuit might have been avoided had the manager of the escrow department in his letter of June 21st specifically advised the plaintiff of the marginal release. Yet her instructions to the bank to not release the mortgage indicates recognition by plaintiff that there had been payment to Mrs. Roberts, which in law effectually released the mortgage even though no formal satisfaction was placed of record. A person may not leave a mortgage of record that has been satisfied by payment in full and still claim the benefits of the recording statutes for a new mortgage he intends to later file as against the rights of other lienholders whose liens were recorded after said payment. The conclusion seems inescapable that plaintiff knew, or as a reasonable person should have known, that the bank had not agreed to become her agent thereby accepting the responsibility of procuring a new mortgage. There is no competent evidence upon which the learned trial court could have properly reached any other conclusion.

The judgment of the lower court against the defendant Valley National Bank is reversed with directions to dismiss plaintiff's complaint against the bank.

Reversed with directions.

STANFORD, PHELPS, DE CONCINI, and LA PRADE, JJ., concurring.