454 P.2d 869

**EQUITABLE LIFE & CASUALTY INSUR-
ANCE CO., Inc., a Utah corpo-
ration, Appellant,**

**v.**

**Gordon RUTLEDGE and Nancy Rutledge,
his wife et al., Appellees.**

**No. 1 CA–CIV 637.**

Court of Appeals of Arizona.

May 22, 1969.

Rehearing Denied June 17, 1969.

Review Denied July 15, 1969.

Fennemore, Craig, von Ammon & Udall, by Roger C. Mitten and Richard A. Miller, Phoenix, for appellant.

Standage & Allen, Mesa, and Evans, Kitchel & Jenckes, by Joseph S. Jenckes, Jr., Phoenix, for appellees, American Savings Life Ins. Co., and others.

Jennings, Strouss, Salmon & Trask, by Rex H. Moore and Thomas J. Trimble, Phoenix, for appellees, Rutledge and others.

DONOFRIO, Chief Judge.

Appellant, plaintiff in the trial court, brought an action for breach of contract and to recover certain monies loaned to the defendants, Rutledge, Willard and Insurance Mailing Associates, a partnership composed of Rutledge and Willard. The complaint also sought damages for the tortious inducement to breach the contract allegedly committed by defendants Stewart, Allen, Fuller, Porter and American Savings Life Insurance Company. In addition, a declaratory judgment was prayed for declaring the plaintiff was not indebted to the defendants Rutledge and Willard. Summary judgment was granted in favor of all the defendants stating that Equitable shall have and recover nothing by its complaint. From this judgment plaintiff appeals.

The facts surrounding the controversy are complicated by the number of parties involved and have been extensively outlined in the appellant's brief, but for the purpose of framing the issues on appeal, the salient facts can be concisely stated. Equitable and the defendants named in the breach-of-contract count entered into a "Special Agents' Agreement" on December 31, 1963, whereby defendants were to use their knowledge and skill in the bulk-mailing business for solicitation of insurance for inductees into the armed forces. Equitable loaned the defendants $226,750.18 to finance their mailing operations, with the debt being considered a personal obligation of the defendants. The contract was to remain in effect for three years unless the five-day optional termination clause was exercised by either party. In addition, there was a nonsolicitation clause prohibiting solicitation by defendants for anyone other than Equitable while the contract was in force, and a forfeiture clause providing for the forfeiture of commissions in the event the special agents were to associate themselves directly or indirectly with any

other insurance company for the purpose of soliciting insurance. It is these latter two clauses that have caused the principal disagreement and they will be considered in detail later.

On March 25, 1965, the defendants gave notice to Equitable that they were terminating the special agency contract, a privilege which, under the terms of the contract, they had every right to exercise at will. About nine days later these same defendants, along with the defendants Stewart, under the corporate name of Electro-Data, began mail solicitation of essentially an identical policy for American Savings. It is unquestioned, under the evidence presented at the time of summary judgment, that several weeks prior to the mailing of the notice of termination all the defendants had discussed the plan of Rutledge and Willard of breaking away from Equitable and soliciting for American Savings and that extensive preparation was made, without disclosure to Equitable, for solicitation to begin as soon after the break as possible. The preparation included the printing of policies by American Savings, preliminary negotiations of an agency contract, and the incorporation of Electro-Data by Stewart, Rutledge and Willard through which they were to conduct the solicitation business. It is also uncontested that actual solicitation did not commence until more than five days after the termination notice. The question we must decide is: Are these prior acts of association and preparation violative of the contract?

Section 1, Clause 3, of the special agency contract, which we call the noncompetition clause, reads:

"It is mutually understood and agreed by the parties hereto that during the term of this contract the Special Agent hereby agrees that he will not solicit, by use of the mails, any form of insurance for any other company nor perform any type of solicitation competitive to this agreement."

Section 2, Clause 4, the forfeiture clause, provides:

"Commissions and renewals will be payable in accordance with the above except * * * should the Special Agent during the term of this agreement associate himself directly or indirectly with any other insurance company for the purpose of soliciting mail order business, all commissions and any other compensation that might otherwise be due the Special Agent will become nonpayable at the option of the company."

Equitable argues that the forfeiture clause proscribes association leading to solicitation, as well as solicitation, and concludes that the defendants Rutledge and Willard breached the contract by their prior association and preparation. It also argues that Stewart, American Savings and the other defendants named were guilty of tortiously inducing the breach. On the other side, the defendants defend the position that the contract was intended to prevent only actual solicitation, thus there was no breach and, a fortiori, no inducement to breach. The Superior Court was of the opinion the defendants' argument was the more cogent. We must agree.

Here the decision rests on the interpretation of the contract. Although it obviously is true that the interpretation of the meaning of words is in essence a fact question, it is undisputed that the common law has delegated the process of interpretation of a writing to the courts. 4 Williston, Contracts, Sec. 616, Page 649, (3rd Ed. 1961). The rule has long been followed in Arizona. Simpson v. Securities Service Corp., 47 Ariz. 464, 56 P.2d 1044 (1936). In applying the process of judicial interpretation, an analysis of the instrument in question must yield the result which best answers the query—what is the intention of the parties? The Court must give meaning to all the words and clauses used by the parties and it is not within its province to alter, revise, modify, extend or rewrite or remake an ageement. Goodman v. Newzona Investment Co., 101 Ariz. 470, 421 P.2d 318 (1966). The courts are aided by rules of interpretation and they can be applied in

this case to produce a clearer image of the intent of the parties.

First, where there are doubts arising from ambiguity of language, they are resolved against the one drafting the instrument since one who speaks or writes can by exactness of expression more easily prevent mistakes in meaning than one with whom he is dealing. Harford v. National Life & Casualty Insurance Co., 81 Ariz. 43, 299 P.2d 635 (1956); Kingman Water Co. v. United States, 253 F.2d 588, 9th Cir. (1958). Equitable was the drafter of this contract and as such must bear the burden of the rule. If it intended the forfeiture clause to be an additional covenant not to associate in preparation of solicitation, it should have clearly stated it as a covenant along with the nonsolicitation clause rather than risk misleading the other parties into believing the language merely provided for forfeiture in the event the nonsolicitation clause was breached.

The Court is also aided in its interpretation by the rule that a contract must be viewed as a whole, and the intent of the parties must be collected from the entire contract and not from detached portions. Goodman v. Newzona, supra; O'Malley Investment & Realty Co. v. Trimble, 5 Ariz.App. 10, 422 P.2d 740 (1967). The forfeiture clause cannot be read in isolation, but must be considered along with the nonsolicitation clause. Viewed thusly, and strengthened by the rule that contracts will be interpreted to avoid a forfeiture if fairly possible, Harford v. National Life & Casualty Insurance Co., supra; De Almada v. Sovereign Camp W.O.W., 49 Ariz. 433, 67 P.2d 474 (1937), it becomes clear that the objective intention of the parties as manifested by the terms of this contract was to proscribe competitive solicitation and to provide for a forfeiture of commissions at the option of Equitable should the defendants Rutledge and Willard associate with others for the purpose of actual solicitation during the continuance of the contract. Since there was no actual solicitation by these

defendants until after proper termination of the contract, there was no breach of the contract. It follows, of course, that since there was no breach of contract, there was no tortious inducement to breach.

Appellant raises the additional argument that even if there was no express covenant breached, there was an implied duty on the part of Rutledge and Willard inherent in the fiduciary relationship of principal and agent to deal fairly with Equitable and that the acts discussed above were antagonistic to that duty.

This conclusion proceeds from the premise that Rutledge and Willard were Equitable's agents, so it must first be determined if there was such a relationship before reaching the question of the validity of the appellant's position.

The label, "Special Agents' Agreement" is in no way determinative of the issue since it is the legal effect given to its terms that decides the nature of the instrument. Woolsey v. Lassen, 91 Ariz. 229, 371 P.2d 587 (1962). The contract reads:

Sec. 1, Paragraph 7:

"The Special Agent is hereby appointed for the purpose of soliciting mail order life insurance and transacting the business hereinafter set forth upon the terms and conditions of this agreement * *."

Sec. 9, Clause 1:

"The Special Agent has no authority to obligate the company in any manner whatsoever, nor to alter, modify, waive or change any of the terms, rates or conditions of the policy or any of the mailing material which has been approved for use by the company, nor to receive any monies due or to become due to the company except as may be authorized in writing by an officer of the company. * * *"

All the contract calls for is that Rutledge and Willard use their knowledge of the mailing business to send the policy materials to potential subscribers. Any further contact was between Equitable and

its customer. An essential element of the principal-agent relationship which carries a fiduciary responsibility is the ability of the agent to act on behalf of his principal with third parties. Valley Nat. Bank of Phoenix v. Milmoe, 74 Ariz. 290, 248 P.2d 740 (1952). The mere act of mailing the blank policies cannot be forced to the point of holding that Rutledge and Willard were acting with a third party on behalf of Equitable. In conclusion, there was no breach of any express terms of the contract, nor a breach of an implied fiduciary duty since no fiduciary relationship existed.

An additional point must be covered. As mentioned earlier, plaintiff's complaint also sought recovery of the balance due on its loan to Rutledge and Willard. This is alleged to be $95,580.36 and was based on plaintiff's assumption that it had the right to forfeit all commissions accruing to defendants after their alleged breach. Since there was no breach, there is no right to forfeiture, therefore there remains a factual question as to the amount owing on the debt.

The record shows that at the end of March, 1965, the balance due Equitable was more than $90,000. Equitable's accounts list commissions accruing to the defendants from April through August, 1965, as $57,280.14. However, there was no other evidence in the record indicating whether or not there was any balance owing to the plaintiff at the time of the hearing on the motion for summary judgment. Defendants' affidavits of March 18, 1966, in support of the motion state as a conclusion:

"The commissions earned * * * to date under the Special Agents' Agreement but unpaid by Equitable Life and Casualty Insurance Company have exceeded the $226,750.18 loaned to us by Equitable Life and Casualty Insurance Company by more than $35,000. I do not know the exact amount of the excess because Equitable Life and Casualty Insurance Company has refused to furnish (us) our current monthly statements."

 According to Rule 56(e), Arizona Rules of Civil Procedure, 16 A.R.S., the affidavit would not have been considered on the motion for summary judgment since it does not appear that the statements were based on personal knowledge of the affiants. Mere conclusions of ultimate facts do not meet the requirements of this Rule. Lujan v. MacMurtrie, 94 Ariz. 273, 383 P.2d 187 (1963). Since no other evidence was presented on the matter, there was a genuine issue of material fact on this point.

Accordingly, we affirm the ruling on the motion for summary judgment except that portion which might relate to the balance due either party after applying the commissions earned by defendants to the loan advanced by plaintiffs.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings not inconsistent with this opinion.

STEVENS and CAMERON, JJ., concur.