IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| DALE BARLAGE, | ) | 2 CA-CV 2004-0127 |
| | ) | DEPARTMENT B |
| Plaintiff/Appellant, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| LEIGH VALENTINE, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20033143

Honorable Sharon Douglas, Judge Pro Tempore

REVERSED AND REMANDED

Kevin W. Rouse                                                 Minneapolis, MN
                                              Attorney for Plaintiff/Appellant

Collins Butler, P.L.C.
 By Michael J. Butler                                              Tucson
                                       Attorneys for Defendant/Appellee

P E L A N D E R, Chief Judge.

¶1        In this contract action, appellant Dale Barlage contends the trial court erred
in vacating the default judgment entered against appellee Leigh Valentine. Because we

conclude the basis for the trial court's ruling was not completely sound, we reverse the order vacating the default judgment and remand the case for further proceedings.

## BACKGROUND

¶2     Appellant Dale Barlage filed this action against Valentine Cosmetics, L.L.C. and Leigh Valentine in June 2003.[1] Barlage attempted to serve the out-of-state defendants in two ways: by mail and publication. Pursuant to Rule 4.2(c), Ariz. R. Civ. P., 16 A.R.S., Pt. 1, he sent the summons and complaint by certified mail to the Dallas, Texas, address listed on Valentine's Texas driver's license. That address, which listed a suite number, was located in a branch of The UPS Store, a commercial mail-receiving agency (CMRA). Barlage also published the summons under Rule 4.2(f), averring that Valentine was "[a]voiding service of process."

¶3     When neither Valentine Cosmetics nor Valentine filed an answer, Barlage applied for and obtained an entry of default. In November 2003, after a default hearing at which Barlage testified, a default judgment in the amount of $784,000 was entered in his favor against Valentine and Valentine Cosmetics. Valentine moved to set aside the judgment, arguing that she had never been served with the summons and complaint.[2] The

---

[1]Barlage had purchased the contractual claims of two other parties who had entered into investment agreements with Valentine Cosmetics.

[2]The motion was filed only on behalf of Valentine, not Valentine Cosmetics, L.L.C., which did not join in the motion or otherwise challenge the entry of default or default judgment. Nor is Valentine Cosmetics a party to this appeal.

trial court granted the motion, stating that although Valentine "was likely evading service," Barlage's "efforts to serve her under Rule 4.2(f) and Rule 4.2(c) . . . have failed."

## DISCUSSION

¶4 Proper, effective service on a defendant is a prerequisite to a court's exercising personal jurisdiction over the defendant. *Koven v. Saberdyne Sys., Inc.*, 128 Ariz. 318, 321, 625 P.2d 907, 910 (App. 1980) ("Proper service of process is essential for the court to have jurisdiction over the defendant."); *Kadota v. Hosogai*, 125 Ariz. 131, 134, 608 P.2d 68, 71 (App. 1980) ("[T]he law is clear that a judgment is void if the trial court did not have jurisdiction because of a lack of proper service."). Barlage contends he properly served Valentine and, therefore, the trial court had personal jurisdiction and erred in vacating the default judgment entered against her. He maintains that, contrary to the trial court's ruling, he properly served Valentine with the summons by publication and by certified mail under Rule 4.2, Ariz. R. Civ. P.

¶5 We will not disturb an order vacating a default judgment unless a clear abuse of discretion is shown. *Cockerham v. Zikratch*, 127 Ariz. 230, 233, 619 P.2d 739, 742 (1980). But, "[s]ome legal justification for the vacation of judgment must exist," and vacating a default judgment without legal grounds is an abuse of discretion. *Id.* We therefore consider the grounds on which the trial court vacated the default judgment.

## I. Service by Publication

¶6 Barlage first argues the trial court erred in determining that service of the summons by publication was inadequate under Rule 4.2(f). In the affidavit he filed to show

3

why he had used publication, Barlage stated that Valentine had been "[a]voiding service." He further stated that Valentine's residence was unknown, despite "a diligent search to find out," and that his search had "failed to reveal any information that might lead to knowledge" of that.

¶7        Citing *Sprang v. Peterson Lumber, Inc.*, 165 Ariz. 257, 798 P.2d 395 (App. 1990), the trial court stated that "a finding of due diligence prior to service by publication is a jurisdictional prerequisite." The court found that Barlage had produced evidence that, "even if [he] had conducted a due diligence search and set forth those facts in [his] affidavit, [he] likely would not have been able to locate the residence of . . . Valentine." But the court ruled that Barlage's affidavit of due diligence, which failed to set forth any of the due diligence measures he had taken, was insufficient.[3]

---

[3]On appeal, Barlage argues the trial court failed to consider a "1994 amendment" to Rule 4. He argues that *Sprang* is inapplicable in this case because it was based on the rule in effect in 1990 when *Sprang* was decided. Barlage also states the amendment "eliminated the necessity of filing an affidavit of due diligence <u>before</u> resorting to service by publication." And he states the prior rule only allowed service by publication if a defendant could not be found, whereas the current rule allows publication when the defendant has "avoided service of process." Our review of the previous rules, however, reveals no such changes. The 1994 amendment to Rule 4.2(f) merely eliminated the requirement for out-of-state publication. *See* Rule 4.2(f), Ariz. R. Civ. P., 16 A.R.S., Pt. 1, Court Comment 1994 Amendment. Additionally, former Rule 4(e)(3), at the time *Sprang* was decided, allowed service by publication when a defendant was "attempting to avoid service of summons." *See* Former Rule 4(e)(3), 154 Ariz. LIX (1987); Former Rule 4(e)(1), 154 Ariz. LVIII (1987). And the plaintiff was required to "file an affidavit showing the publication and mailing and the circumstance warranting the utilization of the procedure." Former Rule 4(e)(3). Thus, contrary to Barlage's suggestion, the affidavit requirement for service by publication has not changed in this state since at least 1987. *Id.*

**¶8** Rule 4.2(f) permits service by publication when an out-of-state defendant has "avoided service of process." The rule also requires that the party who serves pleadings by publication "shall file an affidavit showing the manner and dates of publication and mailing, and the circumstances warranting utilization of the procedure authorized by this subpart which shall be prima facie evidence of compliance herewith." *Id*. The affidavit must "set[] forth facts indicating [the serving party] made a due diligent effort to locate an opposing party to effect personal service." *Sprang*, 165 Ariz. at 261, 798 P.2d at 399; s*ee also Omega II Inv. Co. v. McLeod*, 153 Ariz. 341, 342, 736 P.2d 824, 825 (App. 1987) (finding of due diligence before service by publication is jurisdictional prerequisite). Barlage's affidavit failed to set forth any facts showing a due diligence effort. It merely asserted in conclusory fashion that such an effort had been made and, therefore, was insufficient. *See Sprang*, 165 Ariz. at 261, 798 P.2d at 399.

**¶9** Barlage contends, however, that "[t]here is no dispute that plaintiff Barlage's counsel exercised due diligence in attempting to locate . . . Valentine prior to . . . service by publication." And, he argues, a plaintiff is not required to "rely exclusively on the affidavit supporting service of process by publication." Rather, the court should consider "the entire record" in determining whether Valentine had avoided service, making service by publication valid. In *Hirsch v. National Van Lines, Inc.*, 136 Ariz. 304, 666 P.2d 49 (1983), our supreme court stated that service by registered mail on an out-of-state corporate defendant under former Rule 4(e)(1) and (2) could be valid even though the requisite affidavit had not stated the circumstances warranting the procedure that had been used. But, the *Hirsch*

court found that "there was evidence available to the judge at the time the motion to set aside was heard" indicating that the circumstances had in fact existed. *Id*. at 308, 666 P.2d at 53.

¶10 Here, in contrast, the trial court stated that Barlage had merely introduced evidence that "if [he] had conducted" a due diligence search, he probably would not have been able to locate Valentine. As noted earlier, the court also found that Valentine was "likely evading service of process." Contrary to Barlage's argument, however, this does not suggest that he had shown the circumstances allowing service by publication, namely Valentine's avoidance of service. Rather, it merely reflects the trial court's belief that due diligence efforts, if made, likely would have been fruitless.

¶11 Indeed, Barlage presented some evidence that Valentine had received the summons, but Valentine disputed that, averring that she "first became aware of [the] lawsuit against her on December 10, 2003." And, other than the service by certified mail to Valentine's mailing address, discussed below, the only other service Barlage attempted was by certified mail to Valentine's mother's residence in North Carolina. Thus, we cannot say the trial court erred in finding that Barlage's attempt to serve Valentine by publication had failed.

## II. Service by Mail

¶12 Barlage also contends the trial court erred in determining that, because Valentine herself had not signed the return receipt, he had failed to adequately serve her by certified mail. As noted earlier, Barlage sent the summons and complaint by certified mail

6

to a Dallas, Texas, address listed on Valentine's driver's license.[4] That address was located in a branch of The UPS Store. The certified mail receipt was signed and returned in June 2003 by an "S. Bailey," whom Valentine averred she did not know.[5]

¶13 When Valentine rented her box at The UPS Store, however, she signed an "Application for Delivery of Mail Through Agent" with the United States Postal Service. That application authorized The UPS Store, as a CMRA, to receive "restricted delivery mail." Although the application was a standard form, the authorization to accept certified mail was not simply part of the boilerplate language. Rather, it included a separate box in which Valentine had to write her name to authorize the CMRA to accept "restricted delivery mail." Thus, Valentine expressly authorized her CMRA to accept certified mail on her behalf.

¶14 Rule 4.2(c) requires the serving party to file an affidavit with the court stating, inter alia, that the summons and a copy of the pleading "were in fact received by the party as evidence[d] by the receipt." Citing dicta in *Snow v. Superior Court*, 183 Ariz. 320, 324 n.2, 903 P.2d 628, 632 n.2 (App. 1995), the trial court stated that the Rules of Civil

---

[4]Barlage averred without contradiction below that the Dallas address was not only listed on Valentine's Texas driver's license, but also was used for her criminal history (relating to a charge of driving under the influence of alcohol) with the Texas Department of Motor Vehicles; was used for service of process on Valentine in Texas litigation concerning the same investment contracts at issue in this case; was given by Valentine as her address in a deposition taken in that Texas litigation; and was used in a demand letter sent to Valentine before this action was filed.

[5]The manager of The UPS Store averred in an affidavit that "'S. Bailey' or Sandra Bailey was an employee of The UPS Store as of June 2003."

7

Procedure "require that the return receipt be signed by the individual upon whom service is attempted." Because it was undisputed that Valentine had not personally signed the return receipt in this case, the court ruled that the attempted mail service had "failed."

¶15 *Snow* was a special action that arose from a criminal case in which a summons had been delivered by certified mail to the residential address Snow had listed on an arrest questionnaire. *Id*. at 322, 903 P.2d at 630. The person who signed the return receipt lived at that address and had been named as Snow's "nearest relative/friend." *Id*. That person, however, apparently was not authorized to accept service or certified mail on his behalf. The *Snow* court found that her signature was insufficient because Snow himself had not signed the receipt. Construing Rule 3.4, Ariz. R. Crim. P., 16A A.R.S., the court stated that "the return of the receipt is prima facie evidence of service only when the receipt is signed by the party being served." *Id*. at 324 n.2, 903 P.2d at 632 n.2. And, the court said, the civil rule (Rule 4.2(c)) on which the criminal rule was based also "envisions that the party being served receive service and sign the receipt." *Id.*

¶16 Similarly relying on *Snow*, Valentine argues that, because she did not personally sign the receipt, the attempted service by certified mail was ineffective under Rule 4.2(c). That argument and the trial court's ruling, however, overlook basic principles of agency law. "[A]n agent is 'one who acts on behalf of another.'" *Southeast Ariz. Med. Ctr. v. Ariz. Health Care Cost Containment Sys.*, 188 Ariz. 276, 282, 935 P.2d 854, 860 (App. 1996), *quoting In re John W. Murphey & Helen G. Murphey Trust*, 169 Ariz. 443, 444, 819 P.2d 1029, 1030 (App. 1991). "An essential element of the principal-agent relationship

8

which carries a fiduciary responsibility is the ability of the agent to act on behalf of his principal with third parties." *Equitable Life & Cas. Ins. Co. v. Rutledge*, 9 Ariz. App. 551, 555, 454 P.2d 869, 873 (1969), *citing Valley Nat'l Bank v. Milmoe*, 74 Ariz. 290, 248 P.2d 740 (1952). As our supreme court has stated, "The law of agency is based on the principle of *qui facit per alium*, *facit per se*, *i.e.*, one acting by another is acting for himself." *Gustafson v. Rajkovich*, 76 Ariz. 280, 284, 263 P.2d 540, 543 (1953); *see also In re Coupon Clearing Serv., Inc.,* 113 F.3d 1091, 1099 (9th Cir. 1997) ("One of the chief characteristics of an agency relationship is the 'authority to act for and in the place of the principal for the purpose of bringing him or her into legal relations with third parties.'"), *quoting Violette v. Shoup*, 20 Cal. Rptr. 2d 358, 363 (Cal. Ct. App. 1993). Thus, when an agent acts, as Valentine's agent did here, it is as if the principal herself has acted.

¶17 Valentine has cited no authority, and we are aware of none, that somehow alters or nullifies these general principles of agency law when service of process is at issue. To be sure, the record does not reflect that Valentine expressly or specifically authorized The UPS Store, or otherwise appointed an agent, to accept service of process on her behalf. But Rule 4.2(c) allows service to be made by "any form of mail requiring a signed and returned receipt." By appointing The UPS Store, as her CMRA, to accept restricted delivery mail on her behalf, without any restrictions or qualifications, Valentine made the CMRA her actual agent for that purpose. Thus, as Barlage argues, "under the laws of agency defendant Valentine did execute the certified mail receipt."

9

**¶18** Valentine contends, however, that the California Court of Appeals rejected that same argument in *Dill v. Berquist Construction Co.*, 29 Cal. Rptr. 2d 746 (Cal Ct. App. 1994).[6] She argues that "agents for one purpose cannot appropriately be viewed as agents for all purposes." Although that proposition is correct, it does not apply here because Valentine's CMRA served the very purpose for which it had been appointed.

**¶19** *Dill* involved a California plaintiff serving an out-of-state corporate defendant by certified mail. The court assumed the person who had signed the return receipt might have been an agent of the defendant corporation, but still found the service ineffective. *Id.* at 752. California's procedural rule stated that a corporation must be served "by delivering a copy of the summons and complaint to a corporate officer, a general manager, 'or a person authorized by the corporation to receive service of process.'" *Id.* at 749-50, *quoting* Cal. Code Civ. Proc. § 416.10(b). Because the signee was not such a person, but at most, an agent for accepting mail, the service failed. *Id.* at 752.

**¶20** In contrast, Rule 4.2(c) does not require delivery to someone expressly authorized to receive service, but rather, to "the person to be served." The rule expressly requires the serving party to aver, as Barlage did here, that the summons and pleading "were in fact received by the party as evidence[d] by the receipt, a copy of which shall be attached to the affidavit." Ariz. R. Civ. P. 4.2(c)(3). Barlage's affidavit included the signed receipt as an attachment and otherwise complied with Rule 4.2(c). Because Valentine

---

[6]Even if Valentine's interpretation of *Dill* is correct, we of course would not be bound by that case. *See State ex rel. Ariz. Dep't of Revenue v. Talley Indus., Inc.*, 182 Ariz. 17, 22, 893 P.2d 17, 22 (App. 1994).

unconditionally authorized her CMRA to accept certified mail on her behalf, the CMRA's acceptance of the summons and complaint delivered in that manner sufficiently evidenced Valentine's receipt of service.

¶21            At oral argument in this court, Valentine raised several arguments based on the language of Rule 4.2(c) for the first time.[7] First, Valentine emphasizes the affidavit-related references in Rule 4.2(c) to the papers "*in fact* [having been] received by the *party*" and to the affidavit constituting "prima facie evidence of *personal* service." (Emphasis added.) Valentine argues those references and the repeated use of the phrase, "the party being served," in Rule 4.2(c) reflect that attempted mail service is ineffective unless the party himself or herself actually receives and personally signs for the papers. We reject that argument, however, based on the agency principles discussed above. Valentine personally signed the application that expressly authorized her CMRA, without exception or limitation, to accept certified mail on her behalf. Absent any prohibition in Rule 4.2(c) against that type of arrangement or against such an agent's validly accepting mail service on behalf of "the party being served," we cannot engraft such a qualification into the rule.

¶22            Second, Valentine notes that Rule 4.2(c) permits mail service only "[w]hen the whereabouts of a party outside the state is known" and suggests that Barlage had no such knowledge. But, unlike Rule 4.2(f), which is framed in terms of the present and last known

---

[7]"Generally, issues and arguments raised for the first time at oral argument on appeal are untimely and deemed waived." *Mitchell v. Gamble*, 207 Ariz. 364, ¶ 16, 86 P.3d 944, 949-50 (App. 2004). But that is a procedural rule that courts do not automatically apply, particularly when interpretation of a statute or rule is at issue. *Id.* Therefore, we address Valentine's belated contentions.

11

"residence" of the person to be served, the term "whereabouts" in Rule 4.2(c) is broader and less specific. In his affidavit below, Barlage's counsel stated without contradiction that, although the Dallas address "was a UPS mailbox and not [Valentine's] 'residence,' it could be considered her 'whereabouts,' particularly since she use[d] it on letterhead, on her driver's license, in the criminal court system, in other litigation, and at her sworn deposition" in another case. We agree.

¶23 At oral argument, Valentine also voiced some due process concerns that would arise if service by mail through a CMRA were deemed effective. *See Dixon v. Picopa Constr. Co.*, 160 Ariz. 251, 261, 772 P.2d 1104, 1114 (1989) ("Due process commands that 'notice be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action . . . .'"), *quoting Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865, 873 (1950). Those concerns are not well founded. As in *Dixon*, the record reflects that "under the circumstances here [Barlage] sent notice 'reasonably calculated' to apprise [Valentine] of the impending action against [her]." *Id*. at 262, 772 P.2d at 1115, *quoting Mullane*, 359 U.S. at 314, 70 S. Ct. at 657, 94 L. Ed. at 873. As previously noted, Valentine regularly used the Dallas address and expressly granted actual authority to her CMRA to accept certified mail there on her behalf.

¶24 Arizona courts have recognized effective service of process even on an ostensible (or apparent) agent in the corporate context. *See Koven*, 128 Ariz. at 322, 625 P.2d at 911 (service on corporation's purported officer, who had resigned two years earlier and who apparently did not inform corporation of service or forward papers to it, deemed

12

effective). Therefore, we cannot say that a certified mailing, to a current address, that was accepted by an actual agent was not "reasonably calculated" to provide notice.

¶25 Moreover, under the circumstances presented here, it would also be anomalous for effective service to require a party's actual receipt of papers and personal signature on the receipt when the law recognizes and permits constructive notice of service in many different settings. For example, in several contexts, effective service of process in Arizona does not depend on actual, personal receipt of the summons and complaint by the party to be served. *See* A.R.S. § 10-504 (service of process on corporation may be on its statutory agent or pursuant to civil procedure rules); Ariz. R. Civ. P. 4.1(d), 16 A.R.S., Pt. 1 (permitting service at individual's dwelling or usual place of abode on "some person of suitable age and discretion then residing therein" or on "an agent authorized by appointment or by law to receive service of process"); Ariz. R. Civ. P. 4.1(l) (service on Corporation Commission is deemed personal service on domestic corporation if corporation does not have officer or agent in Arizona upon whom process may be served); Ariz. R. Civ. P. 4.1(n) (permitting service by publication under certain circumstances); Ariz. R. Civ. P. 4.2(f) (same). And, when service on a corporation is made on its statutory agent, the service is deemed complete at that time, even when the agent does not forward the summons and complaint to the principal. *See W. Coach Corp. v. Mark V Mobile Homes Sales, Inc.*, 23 Ariz. App. 546, 549, 534 P.2d 760, 763 (1975) (trial court erred in setting aside default judgment absent showing that statutory agent's failure to forward summons and complaint

13

to principal had resulted from excusable neglect); *see also Postal Benefit Ins. Co. v. Johnson*, 64 Ariz. 25, 32, 165 P.2d 173, 177 (1946).

¶26 In sum, Barlage's service of the summons and complaint by certified mail satisfied the requirements of Rule 4.2(c). Because that service was facially valid, the trial court had no "legal justification for the vacation of judgment" and, therefore, abused its discretion in basing its ruling on the ground that it did. *Cockerham*, 127 Ariz. at 233, 619 P.2d at 742; *see also Koven*, 128 Ariz. at 324, 625 P.2d at 913 ("[T]he trial court erred, as a matter of law, in ruling that it had been without jurisdiction to enter the default judgment.").

¶27 This, however, does not end our inquiry. As noted above, Rule 4.2(c) states that the required affidavit "shall be prima facie evidence of personal service." Prima facie evidence of a particular fact raises a rebuttable presumption of, but does not conclusively establish, that fact. *See Wallace Imports, Inc. v. Howe*, 138 Ariz. 217, 224-25, 673 P.2d 961, 968-69 (App. 1983) ("certificate of title is merely prima facie evidence of the title to a motor vehicle," and "such evidence may be rebutted"); *State v. Rich*, 115 Ariz. 119, 121, 563 P.2d 918, 920 (App. 1977) (A.R.S. § 28-701(B), which prescribes certain speeds that, if exceeded, constitute "prima facie evidence" of unreasonable speed, is "rule[] of evidence and not rule[] of substantive law" and merely "raise[s] rebuttable presumptions, which may be overcome by evidence"); *cf. Andrews v. Blake*, 205 Ariz. 236, n.3, 69 P.3d 7, 13-14 n.3 (2003) (presumption that properly mailed and addressed letter will reach addressee would have been rebutted by denial of receipt in purchase option case).

14

¶28 Because Barlage's affidavit constituted "prima facie evidence of personal service" under Rule 4.2(c) and thereby created a presumption of that fact, the issue is whether Valentine adequately rebutted the presumption. "Service of process can be impeached only by clear and convincing evidence." *Gen. Elec. Capital Corp. v. Osterkamp*, 172 Ariz. 191, 194, 836 P.2d 404, 407 (App. 1992). In her affidavit filed in support of her motion to set aside the default judgment,[8] Valentine averred that she did not know, had never spoken with, and was unrelated to S. Bailey, the UPS Store employee who had signed the return receipt. Valentine also stated that S. Bailey "ha[d] never been authorized to accept service of process for [her]" and had "never told [Valentine] about any type of complaint which she received." Finally, Valentine averred she "first became aware of this lawsuit against [her] on December 10, 2003, and immediately sought advice of counsel."[9]

---

[8]At oral argument in this court, Barlage contended Valentine's affidavit was not properly notarized because it lacked a notary's seal and, therefore, was invalid. In a footnote in his response to Valentine's motion to set aside the default judgment, Barlage moved to strike Valentine's affidavit on that ground. The trial court never ruled on that request, and Barlage did not pursue it further. Because Barlage failed to present or argue this issue in his briefs, and because he cites no authority for his position, we do not address it. *See* Ariz. R. Civ. App. P. 13(a)(5), (6), 17B A.R.S.; *Mitchell*, 207 Ariz. 364, ¶ 16, 86 P.3d at 949-50. In any event, even if Valentine's affidavit had been properly notarized, *see* A.R.S. § 41-313(B)(3), it would not alter the outcome.

[9]In her affidavit, Valentine did not expressly state that she had not personally received the summons and complaint before that time. To the extent the affidavit implies that, however, Barlage presented contrary evidence that she, in fact, had previously received the papers. The trial court found the registered mail service ineffective as a matter of law and, therefore, did not comment or rule on the conflicting evidence, nor did it weigh the veracity of the parties' respective positions. In any event, our decision does not rest on any evidentiary conflict that, if material, would have been for the trial court to resolve in the first

15

¶29 We conclude that Valentine did not adequately rebut the "prima facie evidence of personal service" created by Barlage's affidavit of service by registered mail. Ariz. R. Civ. P. 4.2(c). In her affidavit, Valentine did not dispute the accuracy or repeated use of her Dallas mailing address. Similarly, she did not dispute that she had expressly and unconditionally authorized her CMRA to accept certified mail at that address on her behalf. Nor did Valentine question the fact that her CMRA actually had received via registered mail the summons and complaint and had signed for that receipt accordingly. Because Valentine's personal receipt of the papers and signature on the return receipt were not required under the circumstances presented here, the facts set forth in her affidavit, even if true, are immaterial and insufficient to rebut the presumption of effective mail service under Rule 4.2(c). Therefore, the trial court erred in setting aside the default judgment based on service and jurisdictional grounds.

¶30 Finally, we note that Valentine also sought relief pursuant to Rule 60(c), Ariz. R. Civ. P., 16 A.R.S., Pt. 2. In view of its ruling on service, the trial court did not expressly evaluate or rule on the various factors under Rule 60(c).[10] Resolution of any such issues is

---

instance. *See Johnson v. Brimlow*, 164 Ariz. 218, 220, 791 P.2d 1101, 1103 (App. 1990).

[10]The trial court properly addressed the service-of-process issues, which bear on personal jurisdiction, before addressing any relevant issues under Rule 60(c). *See Marquez v. Rapid Harvest Co.*, 99 Ariz. 363, 365, 409 P.2d 285, 287 (1965) ("[T]he trial court should have determined the question of its jurisdiction before taking any other action. If the court had no jurisdiction because of lack of proper service on the defendant any judgment would be void, and there would be no necessity to consider a question of setting it aside on the basis of excusable neglect.").

16

best left to the trial court in the first instance. *See Koven*, 128 Ariz. at 324, 625 P.2d at 913. We therefore remand the case to the trial court for further proceedings.

## DISPOSITION

¶31       The order vacating the default judgment in favor of Barlage is reversed, and the case is remanded for further proceedings consistent with this decision.


_____
JOHN PELANDER, Chief Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Judge


_____
JOSEPH W. HOWARD, Judge