[Civ. No. 20886.   First Dist., Div. Two.   June 17, 1963.]

N. D. CLARK et al., Plaintiffs and Respondents, v. W. G. ERICH et al., Defendants and Appellants.

Lindsay P. Marshall for Defendants and Appellants.

Daniel K. York and Pearce Young for Plaintiffs and Respondents.

AGEE, J.—Defendants appeal from a money judgment recovered by plaintiffs against them for rentals due under a lease of 2,230 acres of grazing land owned by plaintiffs. The validity of the judgment depends upon whether the lease was extended beyond its original term.

The lease was for 11 years, ending September 30, 1958, at an annual rental of $2,000. It contained an option to renew for an additional five years under the same terms. The rentals involved herein are for a period subsequent to the original termination date.

The federal government, as of October 1, 1955, took 1,566 acres of the subject land in an eminent domain action in fed-

eral court. The compensation to be paid by the government was fixed by agreement of all parties at $150,000. The only issue in dispute at the trial was the apportionment of the award between the respondents, as owners, and the appellants, as lessees.

The court recognized appellants' right to the "bonus value" of the lease, i.e., the market value of the possession and use of the 1,566 acres taken less the amount of rent attributable to such portion. This appraisal was the subject of conflicting expert testimony and the value was determined by the court to be $28,682.58.

This valuation was based upon the eight-year period from the date of the taking to the termination date of the lease, as extended by the five-year renewal option. The amount allowed for this element of compensation is not an issue herein.

The dispute before us relates to but does not directly involve an additional allowance of $11,446.10 made by the court to appellants.

In partial taking cases, where the portion not taken remains susceptible of occupation, the lease remains in force as to the entire leased premises and the lessee must continue to pay the entire future rentals as and when called for by the lease. However, in such a situation, the lessee is entitled to offset this obligation by receiving, out of the total award, such sum as will be the present equivalent of the future rent attributable to the part taken. (*City of Pasadena* v. *Porter*, 201 Cal. 381, 387 [257 P. 526, 53 A.L.R. 679].) The parties agree that this is the law.

In arriving at this amount, the court treated the lease as having been extended for an additional five years by the exercise of the option. It therefore used said total period of eight years as the basis for its computation. The annual rental of the 1,566 acres taken was fixed at $1,700. The parties agreed that the coefficient to be applied to an eight-year period is 6.733. In accordance therewith, the court multiplied $1,700 by 6.733 and determined the total amount to be $11,446.10.

Appellants received this amount solely upon the basis that they were required to pay the rent, not only for the unexpired three years of the original period of the lease, but also for the additional five years provided for by the option.

Appellants do not deny this. They contend, nevertheless, that they did not exercise the option and that their liability for rent ceased at the termination of the original period of the lease. It is obvious that the court found otherwise. If it

had not, a coefficient of less than 3 would have been used and the amount allowed for the payment of future rentals would have been something less than $5,100. Thus, appellants seek to retain the difference between the amount allowed and the amount which would have been allowed if the option had not been exercised and yet avoid the major portion of the very obligation which the award was intended to defray. Somewhat sardonically, appellants state: ''When the Federal Judge's opinion was published respondents should have appealed on the ground that part of the tenants' award was for rent that might never be paid.''

The reason why respondents did not appeal in that action is obvious. The federal court had, by necessary implication, found that the option had been exercised. This implied finding is supported by the statements and representations made by appellants' counsel during the trial of that action. The court acted and relied upon these representations.

There were only two questions of fact in dispute, (1) the ''bonus value'' of the lease, on the basis of eight years of its term unexpired, and (2) whether the annual rental to be allocated to the 1,566 acres should be $1,800 or $1,700. Item (1) was determined at an amount less than appellants' appraisal and more than respondents' appraisal. Item (2) was determined at the amount contended for by respondents. There was no cause for respondents to appeal.

The representations made by appellants' counsel to the federal court with regard to the item of $11,446.10 are admissions against interest and constitute substantial evidence which supports that court's implied finding that the option to renew had been exercised by appellants.

At the beginning of the trial, appellants' counsel made the following statement to the federal court: ''We propose that the tenant has *three items* of damage. The *first one* is the rental which the tenant was obligated to pay, regardless of whether or not the property has been condemned. Under the terms of the lease which we will offer in evidence, he was obligated to pay $2,000 a year for a term extending, with the renewal period, to 1963, approximately *eight years from the time of taking*. In California, the law is that the tenant is still obligated to pay that, whether or not he is deprived of the use of that land by condemnation.

''The *second item* of damage is the so-called bonus value of the lease, . . .

"The *third item* of damages is the loss to the tenant of fixtures or personal property, . . .

"We propose that the division of this award be determined by ascertaining these three items of damage to the tenant, subtracting the subtotal of these from the entire award, and thereby obtaining the portion due to the landowners." (Italics ours.)

Thus, appellants asked the court to consider the renewal option as having been exercised by them and to award them *immediate cash* in return for their assumption of an obligation which, in their words, extended over a period of *"eight* years [not *three*] from the time of taking." This "first" item of damage is separate and distinct from the "second item of damage," which is the "bonus value" of the lease.

Regarding this second item, appellants' counsel stated: "[T]he tenant is entitled, as a part of this entire award, to the bonus value of that option, just as if the option had already been exercised, and the lease extended by that party." The court then asked the following question: "Assuming that to be true, what about the first item? . . . If I understand it, that is a more substantial item, or that is a substantial item, because I don't know the precise number of acres here in Parcel 10." (This parcel, as later shown, is the 1,566 acres taken by the government and thereby withdrawn from the tenant's use.)

To the foregoing, appellants' counsel replied: "I would answer the Court this way, however, that assuming this lease has a bonus value, if the tenant is entitled to that bonus value for the option, for which I have authority, then, I don't see how he can avail himself of that value by exercising an option, without being obligated to pay the rent provided in the lease, itself. So, it seems that *the two cannot be logically separated."* (Italics ours.)

In other words, appellants' counsel represented and admitted to the court that the option could not be used to enhance the bonus value of the lease without also using the extended period provided for in said option to compute the present equivalent of the future rentals called for by the lease. Whether or not appellants' counsel was correct in making the statement which he did is immaterial. The fact is that the court relied upon his statement and acted in accordance therewith by computing both items one and two on the basis that the option had been exercised.

Following the statement of appellants' counsel, as quoted

above, the court stated: "That is one of the issues. I will have to decide in this case." Appellants contend that the court was referring to the question of whether the option should be considered as exercised and, therefore, it could not have concluded that appellants were agreeing that it should be so considered.

This does not follow. At that time no evidence had been introduced. The court was obviously concerned with how to go about computing the amount of what appellants had referred to as the first item to be determined. It did not then know what portion of the $2,000 rental should be allocated to the part taken by the government nor did it know the co-efficient to be used. This evidence came in later through the expert witnesses. In our opinion, the court was referring to the entire issue as to what amount should be included in

Any doubt as to the appellants' representation to the federal court that it should consider the option as being exercised is dispelled by written statements filed by appellants' counsel with that court.

Appellants filed a memorandum prior to the trial, stating that it was "submitted only with respect to Parcel 10." appellants' award for "item one."
(The parcel taken.) It was pointed out therein that appellants had "lost eight (8) years of use of this land, . . . [for which they were] *still obligated to pay an annual rental for eight (8) years."* (Italics ours.)

There is no way in which appellants could have been obligated to pay rent for longer than the three remaining years of the original term *unless* the renewal option was considered as being exercised.

Again, at the conclusion of the trial, appellants filed a written argument in which they state the following: "Counsel and parties have further agreed that the present value of the annual rental for *eight years* is to be determined by multiplying the annual rental attributable to 1566 acres taken, by 6.733. . . . The annual rental attributable to the 1566 acres taken is the sum of $2,000.00, less $300.00 (the annual rental attributable to the remainder not taken by the government, if the Court is to believe the expert witness, Malloy), or $2,000.00, less $200.00 (the annual rental attributable to the remaining portion, if the Court is to believe the expert witness, Bourlin). To reduce this conflicting evidence then to the present value of the rent reserved in the lease attributable to the 1566 acres taken, it would, if the court is to believe the

landowner's expert witness, amount to ·$11,446.10, or, if the court is to believe the expert testimony of the tenant's witness, it would amount to $12,119.40.''

The foregoing is a representation to the court that it should consider the option as being exercised. Both of the figures are based upon an obligation by appellants to pay rent on the 1,566 acres for *eight* years. The appellants, in effect, represented to the court that they were entitled to one or the other of the two amounts testified to by the experts *because appellants had exercised the option* and thereby increased the unexpired period of the lease to *eight years*.

Based upon the record in the federal court action, the pertinent portions of which were admitted in evidence herein without objection, the trial court in the instant action expressly found that appellants, acting through their counsel, had exercised the option to renew. In our opinion, this finding is clearly supported by such evidence.

Furthermore, the doctrine of collateral estoppel is applicable herein. A judgment that necessarily affirms the existence of a fact is conclusive on the parties when the fact is again in issue between them in the same or any other court. (*City of Los Angeles* v. *Jameson,* 165 Cal.App.2d 351, 355 [331 P.2d 1014] ; 29 Cal.Jur.2d, Judgments, § 237.)

Such a judgment is conclusive not only on matters appearing on its face, but also as to those matters which are necessarily determined by the judgment. (Code Civ. Proc., §§ 1908-1911; *McManus* v. *Bendlage,* 82 Cal.App.2d 916, 923 [187 P.2d 854] ; *MacDonnell* v. *Capital Co.,* 130 F.2d 311, 318.)

Therefore, if the federal court judgment necessarily determined that the option was exercised, the doctrine of collateral estoppel should prevent the appellants from now asserting that it was not exercised.

The appellants and respondents, even though co-defendants, were adverse parties in the federal court action as to that phase of the case that had to do with the apportionment of the award between them. (*Pomona College* v. *Dunn,* 7 Cal.App.2d 227, 240-241 [46 P.2d 270].) Appellants were attempting to get as much of the $150,000 as they could *immediately*. In order to do so, they represented to the federal court that they were going to have to pay rent on the 1,566 acres taken for *eight* years.

Before the federal court could determine the amount to be

reserved as the then present value of future rent on the land taken it had to determine the length of the term during which the rent would become due. Thus, it had to determine whether or not the option to renew had been exercised.

The federal court found that the sum of $11,446.10 should be reserved as the then present value of future rent. It arrived at that sum by multiplying the yearly rental due on the land taken by the coefficient applicable to an eight-year term. Since, at the time of the taking, the lease had a remaining term of three years with an option to renew for five years, the use of an eight-year term necessarily implies that the federal court found that the option had been exercised. Appellants accepted the $11,446.10 awarded on this basis. They should now be estopped from asserting that the option was not exercised.

The judgment appealed from herein is affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.