[Civ. No. 28598.   Second Dist., Div. Four.   Aug. 4, 1966.]

DIX BOX COMPANY, Defendant and Appellant, v. SAMUEL STONE et al., Defendants and Respondents.

Jerome Weber, Reuben Rosensweig and Bernard Mattison for Defendant and Appellant.

Beardsley, Hufstedler & Kemble, Seth M. Hufstedler and John Sobieski for Defendants and Respondents.

BISHOP, J. pro tem.*— In this, a condemnation action brought by the County of Los Angeles to acquire several parcels of land, a parcel, to be known to us as parcel 1-5, was owned by defendants Stone. They had leased a portion only of the parcel to defendant Dix Box Company (defendant Dix). A quasi-interpleader proceeding evolved in the main action between defendants Stone and defendant Dix to see if the latter should receive a part of the $575,000 that the county had paid to the defendants Stone for parcel 1-5. The judgment that was entered in this interpleader proceeding denied defendant Dix any of the sum in issue, and it appealed. We are affirming that judgment.

It would be well, early in our consideration of this appeal, to have before us the alternative questions that have been at the center of attention throughout this litigation, and to be familiar with the paragraph of the lease between the defendants that gave rise to the questions. The questions are: In this case, where all of the property covered by the lease is being condemned, does the 16th paragraph of the lease govern or does it not? The paragraph of the lease referred to reads: "In the event of the taking of any portion of said premises by eminent domain, the rental herein specified to be paid shall be ratably reduced according to the area of the building upon the leased premises which is taken, and lessees shall be entitled to no other or further consideration by reason of such taking, and any severance damages occasioned by the taking of any portion of the leased premises and any damages to any structures erected thereon shall be paid to and received by Lessor,

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

and Lessee shall have no right therein or thereto or to any part thereof, and Lessee hereby relinquishes to Lessor any rights to any such damages; provided, however, that if the remaining portion of said building, after deducting the portion taken by said eminent domain proceedings is insufficient for the conduct of Lessee's business, then in that event, Lessee may at its option cancel the lease.''

The defendant Dix took the position, in the interpleader action, that it should be compensated $75,000 for the taking of its leasehold interest, with some five years yet to run, and filed an answer praying for that sum on the theory that the 16th paragraph did not apply. The defendants Stone insisted that by virtue of the provision of the 16th paragraph, defendant Dix had surrendered all its right to be compensated for its leasehold interest, and gave notice that they would move for an order striking the answer of the defendant Dix and for a summary judgment to the effect that defendant Dix had no right to participate in any sum awarded in the condemnation action. Defendant Dix took no issue with the moving parties as to the facts, other than as to the meaning of the 16th paragraph. That, it insisted, was indefinite and uncertain in that it told what would happen if a portion of the property was condemned, but did not say what would happen if all was taken.

The motion was granted and defendant Dix appealed. The parties entered into a stipulation providing that the condemnation action could continue and containing this provision: ''. . . in the event that defendant DIX BOX COMPANY is successful in its appeal then, and in that case, said court shall also retain jurisdiction to determine the respective rights and interests as between defendants SAMUEL STONE AND ROSE STONE and the defendant DIX BOX COMPANY.'' The jurisdiction referred to was that conferred by the opening sentence of section 1246.1 of the Code of Civil Procedure, reading: ''Where there are two or more estates or divided interests in property sought to be condemned, the plaintiff is entitled to have the amount of the award for said property first determined as between plaintiff and all defendants claiming any interest therein; thereafter in the same proceeding the respective rights of such defendants in and to the award shall be determined by the court, jury, or referee and the award apportioned accordingly.''

Pursuant to the stipulation, the condemnation action

continued. An interlocutory judgment was entered September 1, 1960, determining that the fair market value of parcel 1-5 was $575,000, recognizing that defendant Dix was lessee of a portion of the parcel, and concluding with the words quoted above from the stipulation as to what should happen in case the appeal was successful. The final order of condemnation followed, September 16, 1960. A little over a year later defendant Dix's appeal was successful, for on December 28, 1961, the order for the summary judgment was reversed. (See *County of Los Angeles* v. *Stone* (1961) 198 Cal.App.2d 640 [18 Cal.Rptr. 72].)

The superior court, exercising the jurisdiction that had been retained, gave notice that a pretrial conference would be held August 21. The defendants Stone and Dix participated in the conference, which resulted in a pretrial order, setting the case for trial on November 28. As a part of the order, the pretrial statement of the parties was incorporated, in which the issues were agreed to be: "(a) . . . is the Lessee Dix Box Company entitled to participate in the condemnation award?

"(b) The fair market value, if any, of the unexpired term of the Lease in question."

Trial actually began Friday, January 18, 1963, and continued into the following Monday and Tuesday. Defendant Dix called two witnesses and rested, it being understood that defendants Stone were going to make a motion under section 631.8, Code of Civil Procedure, which begins: "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings as provided in Sections 632 and 634 of this code, or may decline to render any judgment until the close of all the evidence." The motion was made and granted. (Had it been denied, the proof of the value of the leasehold interest would have been in order.)

Thereafter the trial court filed findings of fact and conclusions of law. By way of preliminary recitals, in the findings, the events leading up to the moment were set out in greater detail than we have found necessary for our purposes. The findings. then contained FINDINGS OF FACT, which are ap-

pended in a footnote.[1] The conclusions of law and the judgment both declare that the defendant Dix Box Company is not entitled to participate in the condemnation award in this proceeding.

---

[1]"FINDINGS OF FACT

"1. On September 17, 1957, the defendant Dix Box Company, as lessee, and the defendants Samuel Stone and Rose Stone, as lessor, entered into a lease covering approximately 2.15 acres of the parcel in question. Said lease was introduced in evidence as Exhibit 1. Paragraph 16 of said lease provides as follows: 'In the event of the taking of any portion of said premises by eminent domain, the rental herein specified to be paid shall be ratably reduced according to the area of the building upon the leased premises which is taken, and Lessee shall be entitled to no other or further consideration by reason of such taking, and any severance damages occasioned by the taking of any portion of the leased premises and any damages to any structures erected thereon shall be paid to and received by Lessor, and Lessee shall have no right therein or thereto or to any part thereof, and Lessee hereby relinquishes to Lessor any rights to any such damages; provided, however, that if the remaining portion of said building, after deducting the portion taken by said eminent domain proceedings is insufficient for the conduct of Lessee's business, then and in that event Lessee may at its option cancel this lease.'

"2. The said property leased by the Dix Box Company was located in the industrial district of Los Angeles near Union Station. It contained approximately 93,000 square feet of an irregular shape. It had street frontage on one side, along Bauchet Street, along which ran a spur railroad track. There was one building on the property, a wood frame 'shack' which was approximately 20 feet by 80 feet, and had a total area of approximately 1600 square feet. This building was located along a portion of the property's frontage and was used by the Dix Box Company for its offices. The property was paved, and was enclosed by a chain link fence.

The Dix Box Company was in the business of buying and selling used boxes, which business required the receiving, storing and delivering of such boxes. In this business, it was essential to be able to buy boxes whenever they came on the market, and this required available storage space. The principal value of the premises to the Dix Box Company was the area made available to it for the conduct of its business, and the building located thereon did not appreciably increase the value of the leasehold estate.

"3. The lease signed by the parties was a printed form supplied by Mr. Otto L. Aumack, Jr., a real estate agent, who was the agent of both parties for the purposes of this transaction. In addition, each party had the lease reviewed by his attorney before it was executed.

"4. From the testimony of Mr. Dix as to his understanding and intention regarding paragraph 16, and as to what he was told regarding paragraph 16, and from his testimony regarding how paragraph 16 would operate if one-quarter or one-half or a larger fraction of the premises were taken by eminent domain, and from the failure of respondent Dix Box Company to produce any credible evidence that Mr. Dix or Dix Box Company did understand or could have understood that Dix Box Company under any circumstances would receive any consideration other than ratable reduction of rent in the event the property or any part thereof was affected by condemnation, Mr. Dix did understand, and any reasonable person would have understood, and the Dix Box Company did understand at the time Dix Box Company executed said agreement, that para-

It may help us the better to understand the provision of the 16th paragraph of the lease if we have its terms before us and recall the principles that would govern in its absence. We find those principles stated in *Clark* v. *Erich* (1963) 217 Cal.App.

graph 16 applied to the taking of all or any portion of said premises, from 0% to 100%, that in the event of any taking, the rent would be ratably reduced, and that Dix Box Company would receive no other or further consideration by reason of any such taking.

''At no time did Mr. Dix or any other representative or agent of the Dix Box Company convey to Samuel Stone or Rose Stone, to any other agent of Samuel or Rose Stone, or to Mr. Aumack, the information that his understanding of the operation of paragraph 16 was any different from that set forth in this paragraph.

''5. The Court finds that paragraph 16 of the lease was intended by the parties to mean and does mean that in the event of any taking by eminent domain affecting the property, the amount of rent was to be reduced ratably according to the total area of the premises (and not the building) which was taken, and that if so much of the premises was taken that the remaining portion was insufficient for the conduct of the Dix Box Company's business, then and in that event it might at its option cancel the lease. The parties further intended the lease to mean and it does mean that the ratable reduction in the lessee's rent was to be the entire compensation to the lessee for any taking of the premises by eminent domain and that Dix Box Company was not to share in any part of the condemnation award. The Court further finds that a reasonable and objective interpretation of the phrase in paragraph 16— '. . . the taking of any portion of said premises . . . .'—is, and that it was intended to mean and does mean, that the taking of any portion includes the taking of the whole of the premises.

''6. Paragraph 16, as applied to the facts of this particular case, means that when the entire premises are taken by eminent domain, as here, the lessee Dix Box Company is relieved of its obligation to pay rent to Samuel and Rose Stone, and is entitled to no other or further consideration by reason of such taking; that the lessee Dix Box Company is not entitled to recover the fair market value of its leasehold estate, if any, from defendants Samuel and Rose Stone, or otherwise participate in the condemnation award.

''7. On September 22, 1960, one Otto L. Aumack, Jr., executed an affidavit which is entitled 'Affidavit of Otto L. Aumack, Jr., in Opposition to Motion of Samuel Stone and Rose Stone to Strike Answer of Dix Box Company and For Summary Judgment in Favor of Defendants Samuel and Rose Stone and Against Dix Box Co.' Such affidavit was admitted in evidence by reference as Exhibit 2. At the time said affidavit was executed, said Otto L. Aumack, Jr., then had no recollection or knowledge with respect to the understanding and intention of the parties regarding paragraph 16 of said lease, nor did he have any recollection or knowledge of any such understanding and intention at the time of trial, nor did he have at either of those times, any specific recollection of discussing said paragraph 16 with any of the parties; that the contents of said affidavit were based upon statements made to him by Benjamin Dix, the president of Dix Box Company, shortly preceding the execution of the affidavit, and did not represent Mr. Aumack's recollection, nor were the contents of such affidavit with respect to the matters herein referred to, evidence which Mr. Aumack could competently testify to either at the time of execution of the affidavit or at the time of trial; in addition, the statements contained in said affidavit regarding Mr. Dix' understanding of the meaning of paragraph 16 of said lease (appearing on page 2, lines 8-17 of said affidavit) are untrue and incorrect.''

2d 233, 235 [31 Cal.Rptr. 628, 630] where the "only issue in dispute at the trial was the apportionment of the award [in an eminent domain action] between the . . . owners, and the . . . lessees." We quote: "In partial taking cases, where the portion not taken remains susceptible of occupation, the lease remains in force as to the entire leased premises and the lessee must continue to pay the entire future rentals as and when called for by the lease. However, in such a situation, the lessee is entitled to offset this obligation by receiving, out of the total award, such sum as will be the present equivalent of the future rent attributable to the part taken. (*City of Pasadena* v. *Porter*, 201 Cal. 381, 387 [257 P. 526, 53 A.L.R. 679].)"

It was fully recognized, in the course of the Supreme Court's discussion, that the bonus value of the lease, "i.e. the market value of the possession and use of the (portion taken) less the amount of rent attributable to such portion" was properly awarded the lessee, in addition to the rent attributable to such portion.

It will be noted that the principle enunciated in *Clark* v. *Erich*, which we have just quoted, applies from the first portion taken by condemnation up to the point where there is no portion left "susceptible of occupation." We should note in this connection that the 16th paragraph provides an earlier stopping place, where it authorizes the lessee to cancel the lease if the portion left is "insufficient for the conduct of Lessee's business." But a far more fundamental change is effected by the paragraph. In the event of a partial taking of any portion, from the smallest up to all-that-matters, the obligation of the lessee to pay rent is ratably reduced, down until there is no more to pay. The lessee no longer has to continue to pay rent on the portion condemned.

Neither, however, does he have the rights given him by the principle that governs but for the paragraph. Under the principle he was to receive "out of the total award, such sum as will be the present value of the future rent attributable to the part taken." Quite logically he no longer receives such a sum, for none exists. But the paragraph continues, after giving him the rent reduction: "and Lessee shall be entitled to no other or further consideration by reason of such taking." What other or further consideration would he receive, that calls for this preventative provision? What, but the bonus value of the portion taken? All of this he is denied by the 16th paragraph. The further terms of the paragraph respecting

damages, whether for partial taking or injuries to any structure, serve to emphasize the care being taken to insure the limitations being placed upon the rights of the lessee as measured by those of the lessor, "in the event of the taking of any portion of said premises by eminent domain."

We anticipate no disagreement with the conclusions that we have so far expressed, on the part of defendant Dix, because, so far, we are not putting "any portion" to a test. But, we emphasize, "any portion" includes all of the parcel down almost to the point where no portion remains. What, under such a taking, would the lessee's position be? It would have his rent reduced nearly to the vanishing point, and still be without any other consideration—no bonus value. But presto; instead of just a little portion remaining, none remains. Then the lessee, under its version of the paragraph, has the bonus value of its leasehold interest, $75,000 according to its contention, which it can take from the lessor's receipts. We are inclined to agree with the trial court; the "event of taking any portion" of the leased premises occurs even when the portion taken is so great that no portion is left. To hold otherwise results so illogically—no recovery of the leasehold right value on one side of an imaginary line, $75,000 on the other side—that it should not be chosen.

We are quite aware that it is the law of this case, determined by *County of Los Angeles* v. *Stone* (1961) 198 Cal.App. 2d 640 [18 Cal.Rptr. 72] that "the provisions of paragraph 16 must be regarded as ambiguous," under the principles stated in *Beneficial Fire & Casualty Ins. Co.* v. *Kurt Hitke & Co.* (1956) 46 Cal.2d 517 [297 P.2d 428] with the result that an opportunity should be given the parties to establish, by evidence, just what was meant. The parties had their opportunity. The explanation that defendant Dix had to offer was the one that needed evidence to support it, and quite properly he was given the leading role. We have the record of his evidence. It was held insufficient to sustain his contention, on a motion made under section 631.8, Code of Civil Procedure, and it is our duty to accept the findings of the trial court, if the evidence supports them. (*Greening* v. *General Air-Conditioning Corp.* (1965) 233 Cal.App.2d 545 [43 Cal.Rptr. 662, 666].)

To begin with, we read in *Rodriguez* v. *Barnett* (1959) 52 Cal.2d 154, 160 [338 P.2d 907, 910] : "It is well-settled law that in construing a contract the meaning of the words is to be determined from a reading of the entire contract [Citing

case.] ██    If a contract is capable of *two constructions*
courts are bound to give such an interpretation as will make it
lawful, operative, definite, *reasonable,* and capable of being
carried into effect, if that can be done without violating the
intention of the parties. (Civ. Code, §§ 1643, 3541; [citing
case].)'' [Italics added.]

In making its first point on appeal the appellant Dix who
furnished all the extrinsic evidence as to the intention of the
parties, complains that the trial ''with no evidence presented
by the Respondent or the Appellant in connection therewith,
found that the Appellant *understood*'' the contract to mean
what it must mean to be reasonable.    ██    In the absence of
any evidence, other than the words of the contract, to reveal
the intention of the parties, the effect of the code section
requires the reasonable interpretation to be given.

██    Appellant's second argument is based on this premise:
''The lease agreement entered into between Appellant and
Respondent was prepared by the Respondent.'' The evidence
showed that the sixteenth paragraph was not prepared by
either party. It was entirely printed, a part of a printed form
that had been in use for some years. He who furnished the
form was, admittedly, the agent for both parties. He filled out
the blanks in pencil because he expected that to happen which
did—each party submitted it to his attorney before it was
finally prepared for execution. The trial court was quite
warranted in not being persuaded to blame the lessor for the
choice of the words.

Appellant's third point, in its brief on appeal, is that this
court is not bound by the trial court's construction of the
contract, there being ''neither any conflict in the evidence, nor
were the findings of the trial court based on the evidence
which was presented.''    ██    Whether or not we agree with
this contention, or its premises, we do agree with the trial
court's construction of the contract and go along with it,
whether or not we are free to do otherwise.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.