Mariane R. FITZGERALD et al., Appellants,

v.

ALASKA STATE HOUSING AUTHORITY, a public corporation, and Russian Orthodox Greek Catholic Church of North America, Appellees.

File No. 1549.

Supreme Court of Alaska.

June 5, 1972.

W. C. Arnold, Anchorage, for appellants.

Milton M. Souter, Anchorage, for appellee Russian Orthodox Greek Catholic Church.

Before BONEY, C. J., and RABINO-WITZ, CONNOR, ERWIN and BOOCH-EVER, JJ.

BOOCHEVER, Justice.

The Alaska State Housing Authority condemned the Kodiak Hotel and the land on which it was situated. A small portion of that land was owned by the present appellants, the Fitzgeralds, and the larger, remaining portion was owned by the Russian Orthodox Greek Catholic Church of North America. In 1919 the Church leased its portion of the land to the predecessors in interest of the Fitzgeralds. In 1948 the lease was amended, extending its term to 1988 and adding an option to renew for an additional 35 years.[1]

The Fitzgeralds were the sole owners of the hotel building situated on both parcels, and thus received that amount of the condemnation award which was allocated to the value of the structure. In the present appeal, they claim that because of their leasehold interest, they should also receive a portion of the $33,700 award for the land owned by the Church.

The lease contains the following provision:

"It is mutually agreed that in the event of any condemnation proceeding wherein *any part of the above described property,* or any structure thereon, is condemned, under the laws of the City, Territory, State or Federal Government then in the event the proceeds from such proceeding derived from the appropriation of buildings or structures situated on the above described property shall revert to the lessee, and the proceeds derived from the appropriation of any of the above described realty shall revert to the lessor and provided further that in event of any such condemnation aforesaid the parties hereto mutually agree that the yearly rental shall be reduced prorata according to the area of real property appropriated by virtue of said proceedings, and the rental shall be reduced, effective as of the date of the condemnation, in the proportion that the square footage of land so condemned bears toward the remaining area of the land herein demised." [Emphasis added.]

The superior court was persuaded by the contention of the Church that the phrase "any part of the above described property" encompasses the taking of *all* of the property. Accordingly, summary judgment was entered awarding the full amount of the condemnation proceeds to the Church.

On appeal, the Fitzgeralds urge that we limit the applicability of the condemnation clause to a partial taking so that the rights of the parties upon a taking of the entire parcel would be based upon common law.[2] They contend that the condemnation provision of the lease was merely intended to safeguard against the common law result whereby there is no abatement of rent in the event of a partial taking.[3] They claim that there is no similar need to guard against the common law results of a total taking because the condemnation would then automatically terminate the lease and hence all future rent would abate.

We do not find this argument particularly persuasive. While the common law does not provide for rent abatement in the event

---

1. In February 1949 another almost identical lease was executed, the only significant difference being the identity of the individuals signing for the Church.

2. In the absence of a controlling provision in a lease, a lessee at common law is entitled to share in the condemnation award to the extent of his leasehold interest. *E. g.,* Carlstrom v. Lyon Van & Storage Co., 152 Cal.App.2d 625, 313 P.2d 645, 649 (1957); Phillips Petroleum Co. v. Bradley, 205 Kan. 242, 468 P.2d 95, 98 (1970); State by and through State Highway Commission v. Oregon Investment Co., 227 Or. 106, 361 P.2d 71, 73 (1961). *See also* 2 Nichols, The Law of Eminent Domain § 5.23 (3d ed. rev. 1970).

3. *See generally* 2 Nichols, The Law of Eminent Domain § 5.23 [3] (3d ed. rev. 1970); Annot., 163 A.L.R. 679, 682 (1946) and cases cited therein.

of a partial taking, the common law does provide for compensation to the lessee according to the value of the leasehold in the portion of the premises condemned.[4] Thus the lease provision does not so much safeguard against a common law loss, as provide an alternative method of compensation in the form of rent abatement.

The Fitzgeralds further note that the lease clause provides for a pro rata reduction of the yearly rental "in the proportion that the square footage of land so condemned bears toward the remaining area of the land herein demised." They argue that this phrase indicates that the paragraph in question was intended to apply only to a partial condemnation. The Church responds that the clause may equally well cover a total taking, in which event the proportion of the land taken to the remaining area demised is 100 percent, thus resulting in a 100 percent reduction of rentals.

Both parties also cite a number of cases which have construed the particular words or a clause similar to the one in question.[5] County of Los Angeles v. Stone, 244 Cal. App.2d 69, 52 Cal.Rptr. 847 (1966), is especially relevant to the present appeal. In that case the county condemned all of a parcel of land leased to the Dix Box Company by Stone, the owner. The relevant clause of the lease provided that "[i]n the event of the taking of *any portion* of said premises . . . the rental herein specified to be paid shall be ratably reduced . . . [and the] lessees shall be entitled to no other or further consideration by reason of such taking . . . ."[6] [Emphasis added.] Dix, the lessee, claimed $75,000 for its leasehold interest in the condemned land. Following a number of procedural maneuvers and an earlier appeal,[7] the California District Court of Appeal rendered a final judgment with the following rationale:

" '[A]ny portion' includes all of the parcel down almost to the point where no portion remains. What, under such a taking, would the lessee's position be? It would have his rent reduced nearly to the vanishing point, and still be without any other consideration—no bonus value. But presto; instead of just a little portion remaining, none remains. Then the lessee, under its version of the paragraph, has the bonus value of its leasehold interest, $75,000 according to its contention, which it can take from the lessor's receipts. We are inclined to agree with the trial court; the 'event of taking any portion' of the leased premises occurs even when the portion taken is so great that no portion is left. To hold otherwise results so illogically—no recovery of the leasehold right value on one side of an imaginary line, $75,000 on the other side—that it should not be chosen." 52 Cal.Rptr. at 852.

The Stones moved for summary judgment contending that the relevant provision of the lease unambiguously required that the lessor receive the entire award. The trial court granted the summary judgment. The appellate court found that the provision was ambiguous and remanded for parole evidence. 18 Cal. Rptr. at 76–77. Despite testimony indicating that the president of Dix believed the clause to be limited to situations involving less than an entire taking, the trial court again decided that Dix was not entitled to participate in the award. The decision was appealed for the second time.

---

4. *E. g.*, Gawzner v. Lebenbaum, 180 F.2d 610, 612–613 (9th Cir. 1950); City of Pasadena v. Porter, 201 Cal. 381, 257 P. 526 (1927). *See also* cases and authorities cited at note 2, *supra*.

5. Both parties also argue dictionary definitions of the words "any" and "part." But abstracted dictionary definitions of isolated words offer little assistance to the task at hand of construing these words in the context of the whole lease clause. We are not disposed to reduce our analysis to a semantical decision.

6. 244 Cal.App.2d 69, 52 Cal.Rptr. 847, 848 (1966).

7. County of Los Angeles v. Stone, 198 Cal.App.2d 640, 18 Cal.Rptr. 72 (1962).

In the subject case each of the parties adopt diametrically opposing interpretations of the clause in question while contending that the terms are unambiguous. The Church urges that if we should find the clause ambiguous so as to justify the introduction of extrinsic evidence bearing on the intention of the parties, then we should consider certain depositions in the record.[8] We find, however, that the lease is sufficiently clear, so that the intent of the parties must be ascertained from the instrument itself without the need of extrinsic evidence.[9]

We hold that the phrase "any part of the above described property" as used in the subject lease encompasses the taking of the entire parcel. In reaching this conclusion we are persuaded by the reasoning set forth in the *Stone* case, cited *supra,* and the logic of construing a taking of "any part" as embodying a taking of "all" or "every" part.

If we had doubt as to the proper interpretation of the clause, the fact that it was drafted by the Fitzgeralds' attorney would give additional weight to this construction against the present interest of the drafters.[10]

Affirmed.

---

8. Depositions of the attorney who drafted the lease and of the president of the Church committee as to their construction of the terms in question as including an entire taking were expressly not considered by the court below. After announcing that the depositions would not be considered, the court indicated it would proceed to grant the summary judgment if no evidence was offered within 30 days. Since counsel may have been led not to offer evidence because of the court's stated disregard of the depositions, we likewise have not considered that testimony.

9. Port Valdez Co. v. City of Valdez, 437 P.2d 768, 771 (Alaska 1968) ; Pepsi Cola Bottling Co. of Anchorage v. New Hampshire Ins. Co., 407 P.2d 1009, 1013 (Alaska 1965) ; Smalley v. Juneau Clinic Bldg. Corp., 493 P.2d 1296 (Alaska 1972).

10. *E. g.,* Equitable Life & Cas. Ins. Co. v. Rutledge, 9 Ariz.App. 551, 454 P.2d 869 (1969) ; Steven v. Fidelity & Cas. Co., 58 Cal.2d 862, 27 Cal.Rptr. 172, 377 P.2d 284 (1962) ; Christmas v. Cooley, 158 Colo. 297, 406 P.2d 333 (1965). *See generally* United States v. Henry, 427 P.2d 584, 585 (Alaska 1967) ; Pepsi Cola Bottling Co. of Anchorage v. New Hampshire Ins. Co., 407 P.2d 1009, 1013 (Alaska 1965) ; Lumbermen's Mut. Cas. Co. v. Continental Cas. Co., 387 P.2d 104, 108 (Alaska 1963).