Filed 6/30/25

**CERTIFIED FOR PARTIAL PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| RND CONTRACTORS, INC., | |
| Petitioner, | E084508 |
| v. | (Super. Ct. No. CIVSB2116995) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| WISEMAN + ROHY STRUCTURAL ENGINEERS, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for mandate. Gilbert G. Ochoa, Judge.

Petition granted.

Law Office of Jill A. Wood, Jill A. Wood, Scott S. Blackstone, and Sandra D.

Carter, for Petitioner.

Lewis Brisbois Bisgaard & Smith, LLP, Jeffry A. Miller, Tarle Law, P.C., Cynthia

Pertile Tarle, and Lann McIntyre, for Balfour Beatty Construction, LLC as Amicus

Curiae on behalf of Petitioner.

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is
certified for publication with the exception of part III. D.

1

Byron & Edwards, Michael M. Edwards, Thomas W. Byron, and Kaden D. Byron, for Real Party in Interest.

No appearance for Respondent.

## I.

## INTRODUCTION

This case raises an issue of first impression under California law: when a defendant moves for summary judgment, but the plaintiff does not oppose the motion, may another party oppose the motion? We hold that the party may do so if that party and the defendant are adverse to one another. We further hold that there need not be cross-claims between those parties for them to be adverse to one another.

Omar Nuro was injured and Jose Navarro was killed when a steel structure failed on their job site. Nuro and Navarro's family (collectively, Plaintiffs) sued various defendants, including Wiseman + Rohy Structural Engineers (WRSE) and Balfour Beatty Construction, LLC (Balfour). Balfour then filed cross-claims against RND Contractors, Inc. (RND). When WRSE moved for summary judgment, Plaintiffs responded by filing statements of non-opposition to the motion. RND and Balfour, however, opposed the motion, arguing that WRSE was at least partially liable for Plaintiffs' damages. The trial court refused to consider RND's and Balfour's oppositions, finding that they "lacked standing" to oppose WRSE's motion for summary judgment because RND and Balfour had not filed cross-claims against WRSE. The trial court then granted WRSE's effectively unopposed motion.

RND now petitions for a writ of mandate asking this court to direct the trial court to vacate its order granting WRSE's motion for summary judgment and revisit the motion after considering RND's and Balfour's oppositions to it. Balfour supports RND's petition as an amicus. We conclude that the trial court should have considered RND's and Balfour's oppositions to WRSE's summary judgment motion, and that its refusal to do so was prejudicial. We therefore grant RND's petition.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

The Grossmont Union High School District (the District) hired RND, WRSE, and others to erect a building at the Monte Vista High School Event Center. Petitioner RND was the structural steel framing contractor for the project and was responsible for preparing the erection drawings, erection procedures, and bracing plans via a registered structural engineer. WRSE was the structural engineer of record for the project; however, it had no contract with the District or RND. Instead, WRSE was hired as a consultant by the project's architect, which contracted with the District.

Muro and Navarro worked on the project as RND's employees. During the project's construction, a piece of cantilevered steel failed, killing Navarro and seriously injuring Muro.

Plaintiffs sued Hadley Engineering, American Safety Group, Inc., WRSE, and Balfour, alleging their negligence caused the steel section to collapse. Balfour filed a cross-claim against RND, generally alleging that RND's contract with the District required RND to defend and indemnify Balfour against Plaintiffs' claims.

The case proceeded to discovery without the parties filing additional claims or cross-claims. Over a year later, WRSE moved for summary judgment. The thrust of the motion was that the collapse happened because of the steel section's negligent construction, not its negligent design, and WRSE was involved only in its design, and thus owed no duty to Plaintiffs.[1]

Plaintiffs did not oppose the motion but instead filed statements of non-opposition. RND and Balfour, however, opposed the motion. RND's main argument was that WRSE's faulty design plans (namely, the use of two inadequate bolts), which "were relied on and had to be followed" during the project's construction, caused the collapse. RND thus disputed WRSE's position that WRSE was not involved in the "erection of the rest of the building." WRSE argued in its reply, among other things, that the trial court should not consider RND's or Balfour's oppositions because RND and Balfour lacked standing to oppose WRSE's motion. In a sur-reply, RND argued it had standing because it is an "adverse party" in that it would be aggrieved if WRSE's motion were granted

---

[1] We discuss the parties' briefing on the motion and the trial court's ruling on it in greater detail below.

4

because RND (and all other parties) would be precluded from arguing WRSE was liable for Plaintiffs' claims.

After finding that WRSE had met its initial burden, the trial court agreed with WRSE that RND and Balfour "lacked standing" to oppose WRSE's motion. The court found that "[t]here is no precedent for this issue" and the two relevant subdivisions of the summary judgment statute, Code of Civil Procedure[2] section 437c, subdivisions (p)(2) and (*l*), were "less than clear."[3] After discussing a handful of unpublished state and federal trial court decisions addressing the issue, the court noted its agreement with the court finding that a codefendant may not oppose another defendant's motion for summary judgment unless there are cross-claims between them. The court concluded, however, by

---

[2] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[3] Section 437c, subdivision (p)(2) states in full: "A defendant or cross-defendant has met that party's burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the cause of action. Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto. The plaintiff or cross-complainant shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto."

Section 437c, subdivision (*l*) states in full: "In an action arising out of an injury to the person or to property, if a motion for summary judgment is granted on the basis that the defendant was without fault, no other defendant during trial, over plaintiff's objection, may attempt to attribute fault to, or comment on, the absence or involvement of the defendant who was granted the motion."

stating that there was "no clear path" and that the issue was "ripe for further appellate work."

Because the court found WRSE met its initial burden and its motion for summary judgment was effectively unopposed, the court granted the motion.

RND timely filed a petition for a writ of mandate challenging the trial court's grant of summary judgment to WRSE. We stayed the trial court proceedings pending our resolution of the petition and invited WRSE and the superior court to file an informal response, and WRSE did so. We then issued an order to show cause and invited WRSE and the superior court to file a formal return to the petition, but WRSE elected to stand on its informal response and the superior court did not file anything.

III.

DISCUSSION

RND contends the trial court erroneously declined to consider its and Balfour's oppositions to WRSE's motion for summary judgment. RND argues that not only should the court have considered the oppositions but, had it done so, then it would not have granted WRSE's motion. RND thus asks us to direct the trial court to vacate its order granting WRSE's motion for summary judgment, consider RND's and Balfour's oppositions to it, and then rule on it.

6

A. *Summary Judgment Standards and Standard of Review*

The trial court may grant summary judgment if there is no triable issue of material fact and the issues raised by the pleadings may be decided as a matter of law. (Code Civ. Proc., § 437c, subds. (c), (f) A defendant moving for summary judgment satisfies its burden "by showing one or more elements of the cause of action in question cannot be established or there is a complete defense to that cause of action. If the defendant meets this initial burden, the opposing party must then make a prima facie showing of the existence of a triable issue of material fact. [Citation.] [¶] . . . We strictly construe the moving party's affidavits and liberally construe the opposing party's affidavits. We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence." (*City of San Diego v. Superior Court* (2006) 137 Cal.App.4th 21, 25.) Thus, "[w]hen deciding whether to grant summary judgment, the court must consider all of the evidence set forth in the papers (except evidence to which the court has sustained an objection), as well as all reasonable inferences that may be drawn from that evidence, in the light most favorable to the party opposing summary judgment." (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467.)

B. *Balfour's Amicus Brief*

In a separate case, Balfour timely appealed the trial court's summary judgment order three days after RND filed its petition (Case No. E084526). In October 2024, while that appeal was pending, we asked for a response to RND's petition, which set the

deadline for any amicus briefs in early December 2024.  (See Cal. Rules of Court, rule 8.487(e)(3).)  Balfour did not request leave to file an amicus brief until February 28, 2025, meaning it could only be filed "[f]or good cause."  (*Ibid.*)  We granted the request and allowed any party to file a response to it.  In its response, WRSE argues we should not consider Balfour's amicus brief because it was untimely filed without good cause.

We disagree.  Balfour timely appealed the trial court's order that RND's petition challenges.  Although Balfour dismissed that appeal in January 2025, our decision in this case would have decided that appeal since it presents the same issue here—whether the trial court prejudicially erred by not considering RND's and Balfour's oppositions to WRSE's motion for summary judgment.  Under these circumstances, we see no good reason not to consider Balfour's late-filed amicus brief.

C. *Whether RND and Balfour Could Oppose WRSE's Motion for Summary Judgment*

As the parties and the trial court acknowledged, federal district courts are deeply split on whether a defendant may oppose a codefendant's motion for summary judgment when, as here, the plaintiff does not oppose it and there are no cross-claims between the codefendants.[4]  (See generally *ArcelorMittal Plate LLC v. Lapeer Industries, Inc.* (2021) 2021 WL 926276, at *8 (E.D. Mich. Mar. 11, 2021).)  Unsurprisingly, WRSE urges us to follow the cases holding that a codefendant does not have standing to oppose another

---

[4]  The parties do not cite, nor can we find, any federal appellate opinion that has addressed the issue.

8

defendant's otherwise unopposed motion for summary judgment when, as here, there are no cross-claims between the defendants. RND argues cases holding otherwise are more persuasive.

We need not discuss these cases, however, because we agree with RND and Balfour that our Supreme Court's decision in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826 (*Aguilar*) resolves the issue. In that seminal case "clarify[ing] the [California] law that [California] courts must apply in ruling on motions for summary judgment," the court interpreted the principal portions of the summary judgment statute and outlined the burden-shifting framework. (*Aguilar*, *supra*, at p. 843.) As relevant here, the court considered section 437c, subdivision (b)(2), which explains how a party opposing a summary judgment motion must support its opposition.[5] (*Aguilar*, *supra*, at p. 843.) The court construed this subdivision as providing that "any adverse party may oppose" a motion for summary judgment. (*Ibid*.) *Aguilar* thus broadly interpreted section 437c, subdivision (b)(2) as providing that *any party* may oppose a motion for summary judgment so long as that party is "adverse" to the moving party.

---

[5] Section 437c, subdivision (b)(2) states in full: "An opposition to the motion shall be served and filed not less than 20 days preceding the noticed or continued date of hearing, unless the court for good cause orders otherwise. The opposition, where appropriate, shall consist of affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken."

This statement from *Aguilar* is dicta since there was no dispute in that case over who could oppose a summary judgment motion. But dicta from our Supreme Court is "highly persuasive and should generally be followed" unless there is good reason not to follow it. (*Wechsler v. Superior Court* (2014) 224 Cal.App.4th 384, 393 fn. 2; see also *Hubbard v. Superior Court* (1997) 66 Cal.App.4th 1163, 1169.)

WRSE ignores *Aguilar* in its response to Balfour's opposition, even though Balfour contends it controls here. And in its opposition to RND's petition, WRSE incorrectly argues *Aguilar*'s "quotes from other cases, starting on p. 844, mostly . . . use the terms 'plaintiff' and 'defendant,' not 'adverse party,'" and claims the opinion discusses the term "adverse party" only in the context of the Federal Rules of Civil Procedure. But, as noted above, *Aguilar* broadly (and unambiguously) construed section 437c, subdivision (b)(2) as providing that "any adverse party" may oppose a motion for summary judgment. WRSE thus misreads *Aguilar* and, in doing so, provides us no good reason not to follow it here.

No party cites, and we cannot find, any published California authority defining an "adverse party" in the context of summary judgment motions, but RND notes that the term has been defined in other contexts of California law. As for new trial motions, "[a]n 'adverse party' is one whose interest in the subject matter is adverse to or will be affected by the granting of the motion." (*Spruce v. Wellman* (1950) 98 Cal.App.2d 158, 160.) For purposes of an appeal (under a now-repealed statute concerning service of notice of an appeal), "[a]n adverse party is one 'whose rights may be affected by the reversal of the

10

judgment.'"  (*Johnson v. Phenix Ins. Co.* (1905) 146 Cal. 571, 575; see *In re Estate of Young* (1906) 149 Cal. 173, 175.)

In other multiparty cases, courts have held codefendants are "adverse parties," even without cross-claims between them, given their conflicting interests.  In a case concerning an allegedly bad-faith settlement between the plaintiff and two of three defendants without any cross-claims, the court held that "[w]here [a] plaintiff settles with fewer than all defendants, the defendants are clearly adverse parties."  (*Dompeling v. Superior Court* (1981) 117 Cal.App.3d 798, 809, disapproved on other grounds by *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 497-498.)  We similarly held that the plaintiff and two defendants in a state case were all adverse parties to one another in a related, settled federal case where all three of them were named as codefendants.  (*Palm Springs Paint Co. v. Arenas* (1966) 242 Cal.App.2d 682, 688.)  Similarly, in *Clark v. Erich* (1963) 217 Cal.App.2d 233, 239, the court observed that the parties were adverse parties in a federal court eminent domain action, even though they were codefendants in that case because they had competing claims to the fixed amount of compensation the government agreed to pay for the taking.

The common thread in these cases is that parties are deemed adverse to one another if their competing interests in the outcome of the litigation are at odds.  For instance, if defendant A was found not liable at trial while codefendant B was found liable, there would be no question that they would be adverse parties if codefendant B moved for a new trial in an effort to shift liability to codefendant A.  Likewise, there

11

would be no question that they would be adverse parties if codefendant B appealed the underlying judgment exonerating defendant A. (Cf. *Hoover v. Switlik Parachute Co.* (9th Cir. 1981) 663 F.2d 964, 966 [defendant had standing to appeal judgment in codefendant's favor because judgment found that defendant, not codefendant, manufactured injury-causing product].) And when a defendant tries to settle a multidefendant case with a plaintiff, the defendant is adverse to the other codefendants because the defendant is trying to get the best deal for itself, regardless of how it may affect the other codefendants. (See *Dompeling v. Superior Court*, *supra*, 117 Cal.App.3d at p. 809, disapproved on other grounds by *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, *supra*, 38 Cal.3d at pp. 497-498.) This is especially true when the codefendants are alleged joint tortfeasors. (See *Stambaugh v. Superior Court* (1976) 62 Cal.App.3d 231, 238.)

The record here shows that RND and WRSE are adverse parties. The ultimate issue in this case is determining who is liable for Plaintiffs' damages. WRSE, Balfour, and RND are all trying to escape liability by blaming someone else for Plaintiffs' damages. As discussed in more detail below, WRSE claims the construction of the project, which it was not involved in, caused the collapse. RND argues that, at a minimum, WRSE bears some liability for Plaintiffs' injuries because of its involvement with the project's negligent design.

Given this finger-pointing, coupled with RND's and Balfour's position that WRSE is at least partially liable for Plaintiffs' injuries, we conclude RND and WRSE are adverse parties, even though there are no cross-claims between them. As a result, the trial court should have considered RND's opposition. (*Aguilar*, *supra*, 25 Cal.4th at p. 843.)

D. *Prejudice*

We may reverse only if the court's failure to consider RND's opposition was prejudicial. To make that assessment, RND must show that it is reasonably probable that the trial court would have denied WRSE's motion for summary judgment had the court considered RND's opposition. (*Hooked Media Group, Inc. v. Apple, Inc.* (2020) 55 Cal.App.5th 323, 337; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 802.) We conclude RND has made that showing.

All Plaintiffs sued WRSE for negligence and premises liability, and the Navarro plaintiffs sued WRSE for wrongful death as well. As to the negligence claims, Plaintiffs alleged that WRSE "negligently and carelessly provided defective and inaccurate drawings, plans, specifications, safety instructions, and designs" to RND, knowing that RND would use them. Plaintiffs further alleged that WRSE's "plans . . . for use in erection [of the project] did not properly provide for the stabilization of cantilever sections" and "contained inaccurate instructions for the erection of those cantilevered sections." Because RND used WRSE's faulty plans, the cantilevered section collapsed.

WRSE argued in its motion for summary judgment that Plaintiffs could not succeed on any of their claims because, among other reasons, WRSE owed no duty to Plaintiffs. Rather, WRSE asserted that its duty as the "Structural Engineer of Record" was "limited to the review of RND's shop drawings to make sure that they were in accord with the project's design and specifications." Thus, "WRSE never had the duty to maintain the safety of RND's employees or create RND's required erection plans."

According to WRSE, it did not "create RND's required erection plans" or safety plans, nor did WRSE approve them. WRSE instead only "create[d] structural design plans." Further, it was "RND's construction means and methodology" that caused the accident, and WRSE had "no control over the means, methods, and safety precautions of the construction work of the project." WRSE thus asserted that, because it had no duty to ensure Plaintiffs' safety or to create RND's erection plans, Plaintiffs could not show that WRSE acted negligently.

As to Plaintiffs' premises liability claims, WRSE argued it could not be liable for the claims because it did not own, manage, or control the premises where the accident occurred. Instead, the District owned the property and WRSE performed no work on the construction of the project, so it had no control of any kind over the property or the project's construction.

14

RND's opposition to WRSE's motion focused on WRSE's allegedly negligent "structural steel design plan." According to RND, WRSE was critically involved in the "means and methods of the erection of the building." Specifically, WRSE's design plans, which RND asserted "had to be followed," called for three-quarter-inch bolts to be used in the cantilevered areas of the building during its construction. RND claimed that WRSE knew (or should have known) that these bolts were too weak to support the final structure. RND thus argued there were genuine issues of material fact as to the duty WRSE owed Plaintiffs with regard to the building's construction and erection.

In support, RND provided additional evidence, including: (1) deposition testimony from WRSE's "person most qualified," Steve Rohy, purportedly stating that WRSE's structural design plan called for the three-quarter-inch bolts; (2) copies of WRSE's design plans showing the called-for three-quarter-inch bolts; and (3) a declaration from structural engineer Seb Ficcadenti stating, among other things, that WRSE's design "erroneously specified" the three-quarter-inch bolts "at the two cantilevering beam connections that failed, without any indications that additional shoring would be required," and that WRSE's "deficient specification" of the bolts in its design "was the cause of the incident."

According to Ficcadenti, "[s]ince no bolts are required for th[e] connection [where the structure failed] as designed, a special erection condition occurs that requires the use of erection bolts, shoring, or both."  Ficcadenti also claimed that the California Building Code required WRSE, as the "'owner's designated representative for design' . . . to identify special erection conditions that require the addition of erection bolts or the use of shores that are required when the framework is bolted together."

In its reply, WRSE argued RND lacked standing to oppose WRSE's motion for summary judgment, so the trial court should disregard RND's opposition.  WRSE further argued that the opposition failed to show a triable issue of material fact as to the duty, if any, that WRSE owed to Plaintiffs.  WRSE also lodged objections to Ficcadenti's declaration.[6]

At the hearing on WRSE's motion, the trial court asked RND and Balfour to submit supplemental briefs on whether they could oppose WRSE's motion.  Both parties timely complied.

The trial court then granted WRSE's motion for summary judgment.  Based on its statement of undisputed material facts and supporting evidence, the trial court found, among other things:  (1) WRSE's relevant responsibility on the project was limited to structural design; (2) RND was responsible for preparing the project's erection plans, which WRSE never reviewed; (3) RND had the duty to have its erection drawings and

---

[6]  The trial court did not rule on these objections, presumably because it declined to consider RND's opposition.

plans reviewed by a structural engineer, but it did not do so; (4) WRSE's design for the cantilevered section that collapsed required "a full penetration weld and bolts to secure the section" that collapsed; (5) the section was secured only with bolts and not held by RND's crane when it collapsed; and (6) Balfour reviewed and approved RND's erection plan.

Given these (and other) undisputed facts, the court found that WRSE met its initial burden of proof that it was entitled to summary judgment. As to Plaintiffs' negligence and wrongful death claims, the court reasoned that WRSE owed no duty to Plaintiffs because it had "no decision-making ability over the construction of the project and was not the Engineer of Record for any erection plans or safety preparedness." RND, on the other hand, failed to have its erection drawings and plans reviewed by a structural engineer. As to Plaintiffs' premises liability claims, the court reasoned that there was no evidence that WRSE owned or controlled the premises of the construction site. Instead, the District owned the property and Balfour had the responsibility to oversee and protect the contractors and their employees, including Plaintiffs.

The court then found that RND and Balfour lacked standing to oppose WRSE's motion and refused to consider their oppositions. Because the court found that WRSE met its initial burden by showing that it owed no duty to Plaintiffs, and its motion was effectively unopposed, the court granted summary judgment to WRSE.

17

We must decide only whether it is reasonably probable that RND would have received a more favorable outcome had the trial court considered its opposition to WRSE's motion for summary judgment. We conclude that it is. In particular, we conclude that it is reasonably probable that the trial court would not have granted summary judgment of Plaintiffs' negligence claims or the Navarro plaintiffs' wrongful death claim had the court considered RND's opposition.

But we first address Plaintiffs' premises liability claims. RND's opposition said little about the claim and its briefs in this court only mention in passing that Plaintiffs asserted the claims and that WRSE argued the claims failed. As the trial court correctly observed, to succeed on a claim for premises liability, Plaintiffs had to make an initial showing that WRSE owned, possessed, or controlled the property on which Plaintiffs were injured. (See *Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1162.) There is no evidence of this in the record. Instead, the trial court correctly found that the undisputed facts show that the District owned the property and WRSE exerted no control over it. The trial court thus correctly found that Plaintiffs could not succeed on their premises liability claims.

To succeed on a negligence claim, Plaintiffs had to prove that WRSE owed them a duty of care, WRSE breached that duty, and that breach caused Plaintiffs' damages. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673.) Similarly, to succeed on a wrongful death claim, the Navarro plaintiffs had to show that WRSE's negligence or wrongful act caused Navarro's death and the Navarro plaintiffs' resulting damages.

18

(*Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 968.)

WRSE argued, and the trial court found, that these claims failed because WRSE owed no duty to Plaintiffs given its involvement in the project, which was limited to reviewing RND's construction plans to ensure they were consistent with the project's "design and specifications."

But, as RND emphasized in its opposition, RND relied on WRSE's design plan, which called for using the three-quarter-inch bolts that failed. RND supported this argument in part with the deposition testimony of WRSE's person most qualified, Rohy, who explained that WRSE's structural plans called for the bolts, and that the plans indicated that the bolts would be used for "attaching the cantilevered beams to the structure during the erection process." Rohy testified that he knew the cantilever beams would be welded to the structure. Rohy also confirmed that all bolts in its plans, including the three-quarter-inch bolts, "called for bolts that are required in the final strength of the connection."

Ficcadenti provided additional evidence suggesting that WRSE's structural design was faulty and caused the accident. Consistent with Rohy's deposition testimony, Ficcadenti understood WRSE's design as indicating that only the three-quarter-inch bolts were necessary.[7] He did not construe the design plans as calling for additional bracing or

_____

[7] WRSE disputed this in its reply papers, claiming that WRSE's design plans had "a notation for RND to make all necessary determinations for bracing or shoring." In support, WRSE cited a portion of Rohy's deposition testimony (page 43), but that portion says nothing about WRSE's plans allegedly noting that RND had to make bracing and

*[footnote continued on next page]*

19

shoring. In Ficcadenti's view, the erection bolts should have been designed to support nearly 500 pounds more than the weight that the three-quarter-inch bolts supported. That faulty design, in his opinion, caused the collapse.

Ficcadenti's declaration also suggests that WRSE's design may have violated the California Building Code. Ficcadenti opined that the Building Code requires that a project owner's "designated representative for design," which is "usually the structural engineer of record," must identify "[a]ny special erection conditions or other considerations that are required by the design concept, such as the use of shores, jacks or loads that must be adjusted as erection progresses." Rohy stated in his declaration in support of WRSE's motion for summary judgment that he was the structural engineer of record for the project. Ficcadenti's declaration thus suggests that Rohy had an obligation under the Building Code to identify whether the section of the cantilever beam that collapsed was a "special erection condition" that required shoring or jacking (or something else) during the project's erection.

Again, we must determine only if it is *reasonably probable* that the trial court would have denied summary adjudication on Plaintiffs' negligence and wrongful death claims had it considered RND's opposition. We conclude that it is. Based on WRSE's unopposed motion for summary judgment, the trial court essentially found that WRSE was not involved with the project's erection. Instead, the trial court found that WRSE's

shoring determinations. WRSE also cited its "Structural Steel Sheet 1.1, Specification," but the copy of that dense, single-spaced document in our record is virtually illegible.

20

"duty on the project was limited to the review of RND's submittals," so WRSE's plans detailed only "how the project's structure was to be finalized."

But RND's opposition and supporting evidence tend to show that WRSE created the governing structural steel design plan, which called for only three-quarter-inch bolts where the collapse occurred. In deposition testimony that RND offered, however, Rohy testified that WRSE's plans "called for bolts that are required in the final strength of the connection." Ficcadenti's declaration thus raises the question of whether WRSE, as the project's structural engineer of record, had an obligation to specify that more support of some kind (e.g., shoring) was needed so that the three-quarter-inch bolts would not fail. The trial court thus did not consider the unresolved issue of whether WRSE knew or should have known that RND would reasonably rely on WRSE's plan, which called for three-quarter-inch bolts.

In our view, there is a reasonable probability that, had the trial court considered this evidence and RND's opposition, it would not have found that Plaintiffs could not succeed on their negligence and wrongful death claims against WRSE. This is because it is reasonably probable that the trial court would have found that WRSE was involved in the project's design and that there is evidence that suggests the design itself caused the collapse.[8] In other words, the trial court would have considered evidence suggesting that WRSE, as the project's structural engineer and designer of the project's steel structure, had a duty to ensure the design was safe and it breached that duty. We, therefore,

---

[8] To be clear, we make no finding as to what caused the collapse.

21

conclude that the trial court's refusal to consider RND's opposition was prejudicial because, had the trial court considered the opposition, it is reasonably probable that the trial court would have found a triable issue of fact that would have defeated WRSE's motion for summary judgment.

## IV.

## DISPOSITION

Let a writ of mandate issue directing the trial court to vacate its order granting WRSE's motion for summary judgment and to reconsider the motion. When doing so, the trial court is directed to consider RND's and Balfour's oppositions to the motion. RND may recover its costs in this writ proceeding.

CERTIFIED FOR PARTIAL PUBLICATION

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

MENETREZ
J.

22